**IOWA SUPREME COURT BOARD OF PROFESSIONAL ETHICS AND CONDUCT, Complainant,**

v.

**Robert J. CLAUSS, Jr., Respondent.**

**No. 94–1965.**

Supreme Court of Iowa.

April 26, 1995.

there was no pressure on drivers regarding deliv-

Norman G. Bastemeyer and Charles L. Harrington, Des Moines, for complainant.

Roger J. Kuhle of Law Office of Roger J. Kuhle, P.C., West Des Moines, for respondent.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, SNELL, and TERNUS, JJ.

HARRIS, Justice.

There are several counts in this attorney disciplinary case, most of which arose from the lawyer's dealings with a single, highly controversial, client. Because of the serious nature of the violations, and in view of the respondent's past disciplinary history, we agree with the commission's recommendation of a license suspension, but think a more lengthy one is demanded.

Robert J. Clauss, Jr., the respondent lawyer, undertook to represent Tri–State Debt

eries, and no threat to Loeb's job security.

Collection, Inc., an enterprise owned and operated by Robert Hurlbutt. As described by the commission in its findings, the arrangement was confused and, to put it mildly, not one which would invoke admiration. Clients would assign accounts and dishonored checks to Tri–State for collection. Clauss would then permit Tri–State to prepare its own pleadings and file them in its own name, but Clauss would sign them. The address and telephone numbers listed on the pleadings were in fact those of Tri–State.

Typically the suit would seek to collect the amount of the check, punitive damages, and attorney fees. If Tri–State collected, it would remit the amount of the check to the client, but would retain any punitive damages collected and attorney fees. The amount Tri–State collected for attorney fees sometimes exceeded the fees actually paid for the legal services. It is easy to understand why collection defendants and their representatives became confused in attempting to reach Clauss concerning the cases.

I. The first count originally involved a claimed conflict of interest. Clauss sued Brenda Pollard for legal services he had performed. Pollard was also subject to another obligation given to Tri–State for collection. A claim that Clauss failed to adequately inform Hurlbutt of the conflict was dismissed, the commission finding Clauss' informal disclosure was adequate for a person of Hurlbutt's experience. We give the claim of conflict no further consideration.

■ The possible conflict illuminated another, far more serious, breach. In his suit against Pollard, Clauss signed his wife's name to the return of service, stating that she had served the original notice on Pollard. Incredibly, Clauss then notarized the false signature. There is even more. A judgment was entered against Pollard and, at a hearing on a motion to set it aside, Clauss falsely stated under oath that his wife had signed the return in his presence.

Clauss' justification is lame. He thinks he was confused but not deceitful and insists he took pains to disclose his mistake when he learned the truth. He seems to claim some justification from the fact that his wife, though she did not sign the return of service, did in fact serve the papers on Pollard.

■ We are wholly unmoved by the proposed justification. In the first place it seems likely that Clauss' sudden candor was prompted, not by his discovery of new facts, but by the knowledge of the imminent revelation of the actual facts. In the second place Clauss is in an untenable position when he urges that his notarization was only partly infirm. His position improved not at all by the fact that his wife did serve Pollard. The wife's signature was not affixed in his presence; her signature was in fact forged by him. To notarize any signature not affixed in the notary's presence is, alone, a serious violation of ethics. *Committee on Professional Ethics & Conduct v. Bauerle*, 460 N.W.2d 452, 454 (Iowa 1990). To notarize a signature forged by a notary is far worse.

The commission correctly found that Clauss' conduct was in flagrant violation of DR 1–102(A) of the Iowa code of professional responsibility for lawyers (illegal conduct involving moral turpitude and conduct involving dishonesty, fraud, deceit or misrepresentation).

II. Counts II through V involve settlement agreements Clauss reached with Tri–State defendants and thereafter failed to report either to the court or to Tri–State. Default judgments were entered against defendants after settlements had been recorded. The commission correctly found these failures violated DR 6–101(A)(1), (2) and (3) (handling matters beyond lawyer's competence, without adequate preparation, or neglecting client's legal matters).

III. At the conclusion of their relationship, Clauss had a fee dispute with Tri–State. The commission correctly found that Clauss withdrew his claimed fee from Tri–State's fund in his trust account. Under DR 9–102(A)(2) trust funds, if disputed, cannot be withdrawn until the matter is resolved.

The commission found other counts were without merit, but did find violations in comparatively minor matters that, in view of the seriousness of the matters previously mentioned, we choose to pass.

IV. Clauss has become familiar to us in discipline matters. In 1989 we suspended his license for six months for: (1) income tax violations and making false statements regarding the failure; (2) failing to properly monitor a client's trust account; and (3) commingling client's money with his office bank account. *Committee on Professional Ethics & Conduct v. Clauss,* 445 N.W.2d 758 (Iowa 1989). In 1991 we reprimanded Clauss for obtaining a default judgment against a collection defendant who had already paid. *Committee on Professional Ethics & Conduct v. Clauss,* 468 N.W.2d 213 (Iowa 1991). Clauss still later received a private admonition for notarizing a document not signed in his presence. We consider past unethical conduct as an aggravating circumstance. *Committee on Professional Ethics & Conduct v. Peterson,* 524 N.W.2d 176, 179 (Iowa 1994). It is apparent that our past sanctions have not improved Clauss' conduct.

The commission recommended a one-year suspension, certainly a severe sanction and, like all commission recommendations, one that is entitled to be respectfully considered and weighed in our decision. On review though, we conclude the misconduct here is far too extreme for even a one-year suspension.

The commission may have been moved by Clauss' contriteness and by a view that his misconduct was driven more by confusion than by deceit. But we have long refused to justify misconduct on such a basis because to do so would endanger the public. We have said in a slightly different context:

> Nearly every lawyer involved in [discipline] cases could cite personal problems as the cause of the professional downfall. But life in general is a series of problems and it is the fundamental purpose of our profession to face and solve them. Our profession certainly cannot excuse misconduct on the basis of personal problems.

*Committee on Professional Ethics & Conduct v. Cook,* 409 N.W.2d 469, 470 (Iowa 1987). The controlling consideration is the absolute necessity for lawyers to be absolutely honest. We have said:

> Fundamental honesty is the base line and mandatory requirement to serve in the legal profession. The whole structure of ethical standards is derived from the paramount need for lawyers to be trustworthy. The court system and the public we serve are damaged when our officers play fast and loose with the truth. The damage occurs without regard to whether misleading conduct is motivated by the client's interest or the lawyer's own.

*Bauerle,* 460 N.W.2d at 453.

Under all the circumstances we are convinced a three-year suspension is mandated. Even then readmission should not necessarily be automatic. If and when Clauss applies for readmission he should be prepared to convince us he will pose no threat to the public or to the reputation of the legal profession.

Robert J. Clauss, Jr.'s license to practice law is suspended indefinitely with no possibility of reinstatement for three years from the date of this opinion. This suspension applies to all facets of the practice of law. *See* Ct.R. 118.12.

Costs shall be taxed to respondent pursuant to Iowa supreme court rule 118.22.

**LICENSE SUSPENDED.**