**In the Matter of William P. RICKA-BAUGH, A Practicing Attorney.**

No. 02–1145.

Supreme Court of Iowa.

May 7, 2003.

Norman G. Bastemeyer and Charles L. Harrington, Des Moines, for complainant.

William P. Rickabaugh, Tabor, pro se.

PER CURIAM.

The Nebraska Supreme Court disbarred attorney William Rickabaugh for various ethical violations, including accepting a legal matter he was not competent to handle, neglect, and creating fictitious legal documents. The Nebraska court forwarded a copy of the decision to our clerk, and we issued a reciprocal discipline notice and order under Iowa Court Rule 35.18. Rickabaugh filed a timely objection, and a hearing was held before a panel of this court.

At the hearing, Rickabaugh conceded he could not challenge the merits of the underlying Nebraska judgment, but maintained his acute anemia prevented him from adequately conducting discovery and defending his interests in the disciplinary proceedings. He also asserted a Nebraska disbarment differs from an Iowa disbarment, and an Iowa disbarment would be too severe a sanction. *See* Iowa Ct. R. 35.18(2).

Upon our review en banc, we conclude the Nebraska proceeding afforded Rickabaugh an adequate opportunity to defend his interests, a Nebraska disbarment does not differ significantly from an Iowa disbarment, and the appropriate sanction in this case is an indefinite suspension of Rickabaugh's license to practice law in Iowa, with no possibility of reinstatement for three years.

**I. Background Facts and Proceedings.**

The Nebraska Supreme Court summarized the relevant findings in this case as follows:

In regard to count I, respondent advised Randall Davis and his business associate David Mutum (the clients) regarding collective bargaining agreements but failed to inform them that he was not qualified, either by experience

or training, to give such advice. Respondent also represented the clients and their companies as defendants in a lawsuit concerning the collective bargaining agreements which was filed in federal court. Respondent failed to inform the clients that he was not qualified, either by experience or training, to handle the representation of a lawsuit in federal court. Respondent failed to keep the clients advised of developments in the case, including settlement negotiations, and failed to review settlement documents with the clients or to explain to them the import of such documents.

In regard to count II, respondent created fictitious pleadings and forged a judge's signature in an attempt to persuade Davis that respondent had filed a lawsuit and obtained a judgment in favor of one of Davis' companies against another company. The referee rejected respondent's asserted defense that he had created the fictitious pleadings to appease Davis in order to prevent possible unspecified violence by Davis. Respondent could not identify any specific threat of violence which may have been made.

*Nebraska ex rel. Counsel for Discipline v. Rickabaugh,* 264 Neb. 398, 399–400, 647 N.W.2d 641, 642 (2002).

The foregoing factual findings from the Nebraska proceeding are conclusive and not subject to readjudication. Iowa Ct. R. 35.18(2); *In re Kirshen,* 451 N.W.2d 807, 808 (Iowa 1990). Similarly, because neither party filed exceptions to the Nebraska referee's report and recommendation regarding Rickabaugh, the Nebraska Supreme Court considered the referee's findings final and conclusive. *See* Neb. Ct. R. of Discipline 10(L) (rev.2001); *Nebraska ex rel. Counsel for Discipline v. Apker,* 263 Neb. 741, 748, 642 N.W.2d 162, 169 (2002).

Based on these findings, the court concluded Rickabaugh violated "DR 1–102(A)(1), (4), (5) and (6); DR 6–101(A)(1), (2) and (3); and DR 7–102(A)(3) and (5)" as well as his attorney's oath of office, and determined he should be disbarred.

## II. Rickabaugh's Challenge to the Findings.

■ Rickabaugh claims his anemia prevented him from conducting the discovery necessary to acquire evidence supporting his claim that he created the fictitious documents to prevent Davis from committing domestic violence. He also asserts his condition rendered him unable to defend himself against the charges. We reject these claims. Rickabaugh raised the issue of his anemia before the Nebraska referee, and testified at length at the hearing, without seeking breaks or other respite. He failed to file an exception to the referee's report, and did not assert his anemia defense again before the Nebraska Supreme Court. We will not now allow him to conduct his discovery and retry his case anew in our court. There is no evidence his anemia was so debilitating as to rise to the level of a due process deprivation. *See* Iowa Ct. R. 35.18(3)*(a).*

Rickabaugh's actions in accepting a legal matter which he was not competent to handle, neglecting a client's legal matter, and misrepresenting the status of an action and creating fictitious pleadings, including a forged judge's signature, constituted clear violations of comparable provisions of our disciplinary rules. We therefore turn to his claims regarding the appropriateness of the sanction.

## III. Sanction.

*A. Identical discipline.* Rickabaugh notes that while Iowa's reinstatement rule, Iowa Court Rule 35.13, does not provide for reinstatement after disbarment, dis-

barred attorneys may seek reinstatement in Nebraska after 5 years. *See* Neb. Ct. R. of Discipline 10(L) (rev.2001). He argues this means that an Iowa disbarment is more severe than a Nebraska disbarment, and therefore does not constitute identical discipline. Counsel for our Board of Professional Ethics and Conduct responds that despite the formal availability of reinstatement after disbarment, a Nebraska disbarment is virtually a permanent revocation. Counsel cites an affidavit by the Counsel for Discipline of the Nebraska Supreme Court that out of 118 attorneys disbarred since 1981, none of them have been reinstated.

We previously noted the distinction Rickabaugh makes in our *Kirshen* case, but we did not definitively resolve the issue at that time. *In re Kirshen*, 451 N.W.2d 807, 809 (Iowa 1990). We stated:

> We recognize that we are unable to conclude with certainty from this difference in procedural rules that disbarment in Iowa is a more severe sanction than disbarment in Nebraska. We do not have significant data as to how Nebraska has treated disbarred attorneys who have sought reinstatement under its rules. Moreover, there is no way to predict how the Supreme Court of Nebraska will treat attorney Kirshen should he seek reinstatement after the five-year period.

*Kirshen*, 451 N.W.2d at 809.

Although the apparent difference between the reinstatement rules in Nebraska and Iowa renders Rickabaugh's claim facially appealing, we now conclude that disbarment in the two states is essentially an identical sanction for purposes of rule 35.18. Disbarment or license revocation is the highest available sanction in both states. *Compare State ex rel. Neb. State Bar Ass'n v. Miller*, 258 Neb. 181, 198, 602 N.W.2d 486, 499 (1999) (inexcusable cir-

cumstances warrant the "most severe sanction" of disbarment), *with Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Bell*, 650 N.W.2d 648, 653 (Iowa 2002) (sparing attorneys the "ultimate sanction" of revocation). The Nebraska Supreme Court has identified the distinction between disbarment and suspension this way: "Disbarment is the severance of the status and privileges of an attorney, whereas suspension is the temporary forced withdrawal from the exercise of office, powers, prerogatives, and privileges of a member of the bar." *State ex rel. Neb. State Bar Ass'n v. Butterfield*, 172 Neb. 645, 648, 111 N.W.2d 543, 546 (1961) (citations omitted). We similarly view disbarment or revocation in Iowa as a more permanent sanction than a suspension. The right to apply for reinstatement after disbarment after a period of years does not render similar sanctions dissimilar.

Although Iowa's reinstatement rule does not formally reference reinstatements after disbarment, the court has entertained such applications and, on very rare occasions, has even granted them:

> License revocations are ordinarily permanent in Iowa. Indeed our rules spell out no special procedure for applying for readmission by a lawyer whose license has been revoked. On occasion we nevertheless consider such applications under our inherent power and, in extremely rare cases, have granted them. These rare cases have arisen where, in long retrospect, it appears the need for permanent revocation was debatable, and where there has been a demonstrated reformation on the part of the lawyer so that the public interest would not be compromised by readmission.

*Comm. on Prof'l Ethics & Conduct v. Brodsky*, 487 N.W.2d 674, 675 (Iowa 1992); *see In re Reinstatement of Stephenson*,

No. 99–1120 (Iowa Sup.Ct. Oct. 8, 1999) (disbarred attorney reinstated); *In re Reinstatement of Green,* No. 90–1565 (Iowa Sup.Ct. Feb. 14, 1991) (disbarred attorney reinstated contingent on passing bar examination). Viewed in this light, we think—contrary to Rickabaugh's argument—a Nebraska disbarment may be more severe. In Iowa, although reinstatement is rare, a disbarred lawyer need not wait a minimum period before seeking reinstatement.

**B. Appropriate Sanction.** Determining a revocation in Nebraska is the same as a revocation in Iowa does not end our inquiry. We still must address Rickabaugh's claim that the disbarment imposed in Nebraska is more severe than the sanction he would have received in Iowa for the same conduct. *See* Iowa Court R. 35.18(3)(c) (authorizing supreme court to impose identical discipline unless "[t]he misconduct established warrants substantially different discipline in this state").

Rickabaugh's disciplinary violations are serious indeed. He accepted legal work knowing he was not competent to handle it, he neglected his client's legal matters, and he even forged a judge's signature on a fictitious order. His misconduct harmed his clients' interests. Like the disciplinary authorities in Nebraska, we give little weight to Rickabaugh's claim he created the fictitious pleadings to prevent domestic violence. Even if he had produced credible evidence that his client was prone to spousal abuse and Rickabaugh's failures would have ignited his client's anger, his solution exhibits the exact sort of "ethical myopia" noted by the Nebraska referee. When combined with other serious misconduct, tendering a false document to the court may warrant disbarment in Iowa. *Comm. on Prof'l Ethics & Conduct v. Wenger,* 469 N.W.2d 678, 679 (Iowa 1991). Rickabaugh's action, fortunately, fell short of such fatal misconduct. This is only a minor mitigating factor here, however, because—due to Rickabaugh's neglect—there was no case in which to file the forged document.

Considered in the light of similar misconduct by other Iowa lawyers, we conclude the appropriate sanction for Rickabaugh is a lengthy suspension rather than a revocation. *See, e.g., Comm. on Prof'l Ethics & Conduct v. Harris,* 524 N.W.2d 179, 181 (Iowa 1994) ("gross misconduct" including misleading client and trust account violation warrants three-year suspension); *Wenger,* 469 N.W.2d at 681 (three-year suspension for tendering false testimony and document during disciplinary proceeding); *Comm. on Prof'l Ethics & Conduct v. Nadler,* 467 N.W.2d 250, 254–55 (Iowa 1991) (neglect, attempt to limit liability to client, conflict of interest and failure to cooperate with disciplinary committee warrants three-year suspension).

We therefore suspend William Rickabaugh's license to practice law in Iowa for an indefinite period, with no possibility of reinstatement for at least three years after the date of filing of this opinion. This suspension applies to all facets of the practice of law. Iowa Ct. R. 35.12(3). Upon application for reinstatement, Rickabaugh must establish that he has not practiced law during the suspension and that he has in all other ways complied with the requirements of Iowa Court Rule 35.21. Costs of this action are taxed to Rickabaugh pursuant to Iowa Court Rule 35.25.

**LICENSE SUSPENDED.**