# IN THE SUPREME COURT OF IOWA

No. 17–1415

Filed February 23, 2018

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Appellee,

vs.

**SEAN JOSEPH BARRY,**

Appellant.

On appeal from the report of the Iowa Supreme Court Grievance Commission.

An attorney appeals a report of the grievance commission recommending we suspend his license to practice law in this state. **LICENSE SUSPENDED.**

David L. Brown of Hansen, McClintock & Riley, Des Moines, for appellant.

Tara van Brederode and Susan A. Wendel, Des Moines, for appellee.

**WIGGINS, Justice.**

The Iowa Supreme Court Attorney Disciplinary Board brought a complaint against an attorney, alleging numerous violations of the Iowa Rules of Professional Conduct in the attorney's representation of a client in a dissolution proceeding. For fourteen months, the attorney misrepresented the status of the dissolution proceeding to his client and his client's brothers. Moreover, the attorney prepared a fraudulent dissolution decree, to which he attached a signature page bearing a judge's signature from a different case. A division of the Iowa Supreme Court Grievance Commission found the attorney's conduct violated our ethical rules.

Based on the attorney's violation of our rules, the commission recommended we suspend his license to practice law for eighteen months. On our de novo review, we find the attorney violated the provisions of our rules. However, we disagree with the length of the recommended suspension. We suspend the attorney's license to practice law indefinitely with no possibility of reinstatement for one year from the date of filing this opinion.

## I. Scope of Review.

We review attorney disciplinary proceedings de novo. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. West*, 901 N.W.2d 519, 522 (Iowa 2017). The Board must prove ethical violations by a convincing preponderance of the evidence. *Id.* "A convincing preponderance of the evidence is more than the typical preponderance standard in a civil case but less than proof beyond a reasonable doubt." *Id.* We may impose a greater or lesser sanction than what the commission has recommended upon proof of an ethical violation. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Vandel*, 889 N.W.2d 659, 662 (Iowa 2017). "While we respectfully

consider the commission's findings and recommendations, they are not binding on us." *Id.*

## II. Background Facts and Proceedings.

On February 7, 2017, the Board filed a complaint against Sean Barry alleging multiple ethical violations in his representation of Richard Miller in a dissolution proceeding. The Board filed an amended complaint on June 5.

On June 30, the Board and Barry filed a stipulation pursuant to Iowa Court Rule 36.16, wherein the parties waived a formal hearing on the matter and agreed to the facts, rule violations, and mitigating and aggravating circumstances. The commission approved and accepted the parties' joint stipulation.

Stipulations of facts bind the parties. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Nelson*, 838 N.W.2d 528, 532 (Iowa 2013). We construe factual stipulations "with reference to its subject matter and in light of the surrounding circumstances and the whole record, including the state of the pleadings and issues involved." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Gailey*, 790 N.W.2d 801, 803–04 (Iowa 2010) (quoting *Graen's Mens Wear, Inc. v. Stille-Pierce Agency*, 329 N.W.2d 295, 300 (Iowa 1983)). Because the authority to license and sanction lawyers rests with us, we are not "bound by a stipulation of a violation or of a sanction in reaching our final decision in a disciplinary case." *Id.* at 804. Based on the stipulation of the parties and our de novo review of the record, we make the following findings of fact.

Barry has practiced law in Iowa since April 2008. He also has a license to practice law in Colorado. However, the Colorado court suspended his Colorado license on May 1, 2012, for nonpayment of his inactive fee. His Colorado license is currently under suspension.

At the time of the alleged misconduct, Barry practiced law as a partner in the law office of Montgomery, Barry, Bovee & Barry, which is located in Spencer. In May 2014, Miller hired Barry to represent him in dissolving his marriage. Barry met with Miller and a couple of his brothers to obtain all the relevant information to draft Miller's dissolution petition and stipulation. Barry prepared the documents, both of which Miller signed on May 27. That same day, Barry notarized Miller's signature on the dissolution petition. Barry never filed the petition with the court and failed to have the petition served on Miller's wife.

On August 29, Barry notarized a power of attorney that he had prepared for Miller in which Miller designated his brothers as agents with general authority to act on his behalf.

From May 27, 2014, to the end of July 2015, when Miller or his brothers asked about the status of the dissolution, Barry repeatedly lied to them that he had filed the dissolution petition. On one occasion, Barry falsely informed one of the brothers that he had Miller's wife served and she had twenty days to answer. After the end of the twenty-day period to answer, the brother asked about the next step, to which Barry falsely informed him that Miller could seek a default judgment. The brother continued to request updates from Barry on the status of the dissolution. Barry either failed to return the brother's phone calls or falsely informed him the matter was progressing.

At a meeting, when Miller and his brothers expressed their concerns about the prolonged dissolution process, Barry knowingly failed to advise them that he had not yet filed the dissolution petition or served it on Miller's wife. After this meeting, they requested updates from Barry almost daily. Barry either failed to respond to the requests for updates

or, when he did respond, continued to misrepresent the status of the dissolution.

In January 2015, Miller's other brother went to Barry's office, seeking a status update on the dissolution. Despite knowing he had not filed the petition, Barry falsely informed the brother "the Judge had signed the Decree, but there was a delay in getting them recorded."

On or about July 8, the same brother went to Barry's office to request copies of the decree. Barry gave the brother a document that Barry misrepresented as a copy of an original dissolution decree that dissolved Miller's marriage. To create this fraudulent decree, Barry copied a signature page from an order setting a hearing in an unrelated case bearing Judge Patrick M. Carr's signature. He altered the case title and the case number on this signature page. Without Judge Carr's knowledge or authorization, Barry attached the signature page to the fraudulent decree. He inserted the file-stamp data "E-FILED 2015 JAN 14 11:33 AM CLAY — CLERK OF DISTRICT COURT" on the top of all four pages of the fraudulent decree. Barry also inserted the case number to the first page of the fraudulent decree.

On July 27, members of Miller's family went to the office of the Clay County Clerk of Court to search for the records relating to Miller's dissolution of marriage. The staff of the clerk's office could not locate Miller's dissolution decree in the court records. The staff contacted Barry's law office and, in Barry's absence, spoke with other members of the law office to inquire about the dissolution case. The staff subsequently sought assistance from the electronic data management system support office in Des Moines concerning the fraudulent decree Barry had presented to the Miller family.

On July 30, the clerk emailed Chief Judge Duane E. Hoffmeyer to inform him of the situation. Chief Judge Hoffmeyer called the Board and subsequently provided affidavits from the Clay County Clerk of Court, a letter from the Miller family, and a copy of the forged decree. In a letter dated August 6, Barry reported his ethical violations for neglecting the dissolution matter and engaging in dishonest conduct.

Based on Barry's conduct, the Board alleged six violations of the Iowa Rules of Professional Conduct—(1) 32:1.3 (lack of diligence); (2) 32:1.4(a)(3) (failure to keep client reasonably informed); (3) 32:1.4(a)(4) (failure to promptly comply with reasonable requests for information); (4) 32:8.4(b) (criminal act that reflects adversely on honesty, trustworthiness, or fitness as a lawyer); (5) 32:8.4(c) (conduct involving dishonesty, fraud, deceit, or misrepresentation); and (6) 32:8.4(d) (conduct prejudicial to the administration of justice).

On September 5, 2017, the commission entered its findings of fact, conclusions of law, and recommendation. The commission found Barry violated all the rules alleged in the Board's complaint and recommended an eighteen-month suspension of Barry's license. Barry appealed. We discuss additional facts as needed.

**III. Ethical Violations.**

**A. Lack of Diligence—Rule 32:1.3.** This rule provides, "A lawyer shall act with reasonable diligence and promptness in representing a client." Iowa R. Prof'l Conduct 32:1.3. An attorney must "handle a client matter in a 'reasonably timely manner.'" *Vandel*, 889 N.W.2d at 667 (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Netti*, 797 N.W.2d 591, 598 (Iowa 2011)). "[W]hen an attorney fails to appear at scheduled court proceedings, does not make the proper filings, or is slow to act on matters[,]" the attorney violates rule 32:1.3. *Nelson*, 838 N.W.2d at 537.

Barry failed to exercise due diligence by never filing the completed dissolution petition despite the lapse of fourteen months. Barry had all the necessary information to draft the petition and stipulation. Miller signed both documents, and Barry notarized Miller's signature on the petition. Thus, to commence the dissolution process, all Barry had to do was simply file the petition. Barry admitted in his letter to the Board that Miller's dissolution case was "simple" because there were no children and no assets of any significant value. Yet he failed to file the petition.

In *Iowa Supreme Court Attorney Disciplinary Board v. Weiland*, we held a lawyer violated rule 32:1.3 because he delayed filing a dissolution petition for four months. 885 N.W.2d 198, 208–09 (Iowa 2016). It logically follows that Barry's wholesale failure to file the petition violates the rule.

Barry's lack of diligence extended the case into a fourteen-month ordeal when it could have been resolved much sooner. Miller eventually retained new counsel who completed the dissolution in less than six months. Accordingly, the Board proved by a convincing preponderance of the evidence that Barry violated rule 32:1.3.

**B. Keep Client Reasonably Informed—Rule 32:1.4(a)(3).** This rule requires an attorney to "keep the client reasonably informed about the status of the matter[.]" Iowa R. Prof'l Conduct 32:1.4(a)(3). Barry not only failed to reasonably inform the Millers about the status of the dissolution but also misled them about the filing status of the petition and service of process on Miller's wife. *See Weiland*, 885 N.W.2d at 209 (holding the attorney failed to keep his client updated about the status of the client's dissolution and made misrepresentations about the filing status of the petition and service of process on the client's spouse).

Moreover, Barry created and presented a fraudulent dissolution decree to the Millers. Instead of keeping them reasonably informed, Barry actively misinformed. We conclude the Board proved by a convincing preponderance of the evidence that Barry violated rule 32:1.4(a)(3).

**C. Promptly Comply with Reasonable Requests for Information—Rule 32:1.4(a)(4).** This rule requires a lawyer to "promptly comply with reasonable requests for information[.]" Iowa R. Prof'l Conduct 32:1.4(a)(4). "A lawyer's regular communication with clients will minimize the occasions on which a client will need to request information concerning the representation." *Id.* r. 32:1.4 cmt. 4. "When a client makes a reasonable request for information," this rule "requires prompt compliance with the request, or if a prompt response is not feasible, that the lawyer, or a member of the lawyer's staff, acknowledge receipt of the request and advise the client when a response may be expected." *Id.*

From May 27, 2014, to the end of July 2015, when Miller or his brothers repeatedly asked about the status of the dissolution, Barry failed to communicate to them that he had not filed the petition and had not served it on Miller's wife. Clearly, because Barry failed to communicate regularly with the Millers, they repeatedly requested information concerning the prolonged delay in the dissolution process.

In response to one of Miller's brother's reasonable request for information, Barry told him Miller's wife had been served and had twenty days to answer instead of informing him of the delay in filing or, rather, nonfiling. *See Weiland*, 885 N.W.2d at 210 (finding the attorney violated rule 32:1.4(a)(4) for lying to his client that he had filed the petition when the client asked for an update and for continuing to mislead her by blaming the delay on the process server). When the brother asked about

the next step after twenty days had elapsed, Barry misled him by explaining the process for obtaining a default judgment instead of telling him the truth.

Moreover, the Millers went to Barry's office to convey they were upset with the long delay in the whole process. They requested updates almost daily thereafter. Barry continued to mislead them by creating a fraudulent dissolution decree. Based on the foregoing, we find the Board proved by a convincing preponderance of the evidence that Barry violated rule 32:1.4(a)(4).

**D. Criminal Act that Reflects Adversely on Honesty, Trustworthiness, or Fitness as a Lawyer—Rule 32:8.4(b).** This rule prohibits a lawyer from "commit[ting] a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects[.]" Iowa R. Prof'l Conduct 32:8.4(b). "It is the commission of a criminal act reflecting adversely on a lawyer's fitness to practice law, not the act of getting caught committing a crime, which constitutes a violation of this rule." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Taylor*, 887 N.W.2d 369, 378 (Iowa 2016). Thus, even if the state has not charged, or the court has not convicted, the lawyer of a crime, the lawyer does not necessarily escape the ambits of rule 32:8.4(b). *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Lustgraaf*, 792 N.W.2d 295, 299 (Iowa 2010).

The Board found that Barry violated rule 32:8.4(b). In its amended complaint, it cited to Iowa Code section 715A.2. Iowa Code section 715A.2(1) states,

> 1. A person is guilty of forgery if, with intent to defraud or injure anyone, or with knowledge that the person is facilitating a fraud or injury to be perpetrated by anyone, the person does any of the following:

*a.* Alters a writing of another without the other's permission.

*b.* Makes, completes, executes, authenticates, issues, or transfers a writing so that it purports to be the act of another who did not authorize that act, or so that it purports to have been executed at a time or place or in a numbered sequence other than was in fact the case, or so that it purports to be a copy of an original when no such original existed.

*c.* Utters a writing which the person knows to be forged in a manner specified in paragraph "*a*" or "*b*".

*d.* Possesses a writing which the person knows to be forged in a manner specified in paragraph "*a*" or "*b*".

Iowa Code § 715A.2(1)(*a*)–(*d*) (2015).

Iowa Code section 715A.2(2) provides,

2. *a.* Forgery is a class "D" felony if the writing is or purports to be any of the following:

. . . .

(3) A check, draft, or other writing which ostensibly evidences an obligation of the person who has purportedly executed it or authorized its execution.

. . . .

*Id.* § 715A.2(2)(*a*)(3).

The evidence in the stipulation is sufficient to show Barry committed forgery pursuant to section 715A.2. Barry knowingly and intentionally created a fraudulent dissolution decree and presented it to the Millers as an original decree signed by a judge without the judge's authority or knowledge. Barry attached the judge's signature page from another case to the decree, changed the case title and case number on the signature page, inserted the case number on the first page of the decree, and inserted file-stamp data to all four pages of the decree.

Barry's crime of forgery reflects adversely on his honesty, trustworthiness, and fitness as a lawyer, even if the authorities never charged him with the crime. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Stowe*, 830 N.W.2d 737, 743 (Iowa 2013) ("We have previously recognized the crime of forgery, by its very nature, reflects adversely on an attorney's fitness to practice law."). We therefore find on our de novo review the Board proved by a convincing preponderance of the evidence Barry violated rule 32:8.4(b).

**E. Conduct Involving Dishonesty, Fraud, Deceit, or Misrepresentation—Rule 32:8.4(c).** This rule prohibits an attorney from "engag[ing] in conduct involving dishonesty, fraud, deceit, or misrepresentation[.]" Iowa R. Prof'l Conduct 32:8.4(c). "Honesty is necessary for the legal profession to function." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Haskovec*, 869 N.W.2d 554, 560 (Iowa 2015). We take rule 32:8.4(c) violations very seriously. *Weiland*, 885 N.W.2d at 211.

Misrepresentation requires a level of scienter that is more than negligent behavior or incompetence. *Id.* Instead, "the key question we must answer is whether the effect of the lawyer's conduct is to mislead rather than to inform." *Id.* at 211–12 (quoting *Haskovec*, 869 N.W.2d at 560).

Here, Barry knowingly and intentionally misrepresented to the Millers that he had filed the dissolution petition when in fact he had not filed such a petition. To continue with the guise that the dissolution process was underway, Barry told one of Miller's brother that Miller's wife had been served and had twenty days to answer, all while knowing he had not filed the petition. When the brother followed up with Barry after twenty days had passed, Barry lied about being able to obtain a default judgment.

When Miller's other brother went to Barry's office seeking information on the status of the case, Barry told him a judge had signed the decree but there was a delay in getting it recorded. To bury the truth even further, Barry created a fraudulent dissolution decree by attaching a signature page with the judge's signature from a different case, changing the case title and case number on the signature page, inserting the case number on the first page of the decree, and inserting file-stamp data to each of the four pages of the decree. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Thompson*, 732 N.W.2d 865, 867 (Iowa 2007) ("Forging a signature involves dishonesty, fraud, deceit, and misrepresentation.").

Based on the foregoing, we agree with the commission and find the Board proved that Barry violated rule 32:8.4(c) by a convincing preponderance of the evidence.

**F. Conduct Prejudicial to the Administration of Justice—Rule 32:8.4(d).** This rule prohibits an attorney from "engag[ing] in conduct that is prejudicial to the administration of justice[.]" Iowa R. Prof'l Conduct 32:8.4(d). Actions that "violate well-understood norms and conventions of the practice of law and hamper the efficient and proper operation of the courts will generally constitute a violation of this rule." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Liles*, 808 N.W.2d 203, 206 (Iowa 2012).

Barry undoubtedly delayed court proceedings because his charade lengthened the dissolution process for months on end. Moreover, he caused court personnel to invest time and energy in searching court records, verifying cases, and investigating the matter. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. McGinness*, 844 N.W.2d 456, 463 (Iowa 2014) (stating a lawyer violates rule 32:8.4(d) when his or her misconduct

wastes judicial resources). Accordingly, the Board proved by a convincing preponderance of the evidence Barry violated rule 32:8.4(d).

**IV. Sanction.**

In determining the appropriate sanction, we engage in a fact-based analysis and consider a number of factors, such as "the nature of the underlying violation, need to deter, public protection, protection of the reputation of the legal profession, and the [lawyer]'s fitness to practice law." *Thompson*, 732 N.W.2d at 867. We also take into account mitigating and aggravating circumstances. *Id.* There is no general disciplinary standard for a particular type of attorney misconduct; however, we are concerned with maintaining some degree of uniformity throughout our disciplinary cases. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Clauss*, 711 N.W.2d 1, 4 (Iowa 2006). Yet this concern should not run afoul of "the particular facts in each case [which ultimately] drive the resulting discipline." *Thompson*, 732 N.W.2d at 867.

Although we do not condone Barry's lack of diligence and other violations of our ethical rules, we agree with the commission that the forging of a court order is the most egregious of his violations. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Grotewold*, 642 N.W.2d 288, 294 (Iowa 2002) (stating "misrepresentation [was] the most serious violation in [the] case" among the violations); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Clauss*, 530 N.W.2d 453, 454 (Iowa 1995) (noting the commission found violations in relatively minor matters but choosing to pass on these violations because of the seriousness of other violations, such as forging a signature). "The concept of [misrepresentation] is repulsive to our system of justice and its very presence within our profession supports serious discipline . . . ." *Grotewold*, 642 N.W.2d at 294.

Sanctions for attorney misconduct involving misrepresentation generally range from a public reprimand to a three-year suspension. In some cases, we found a public reprimand sufficient for attorney misconduct involving false instruments or forgery. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Newman*, 748 N.W.2d 786, 787–89 (Iowa 2008) (publicly reprimanding an attorney with no prior disciplinary record who forged a judge's signature on an approved-but-unsigned order and filed it with the court); *Comm. on Prof'l Ethics & Conduct v. Roberts*, 312 N.W.2d 556, 557–58 (Iowa 1981) (publicly reprimanding an attorney who misled the court by forging his client's signature on an affidavit and filing the affidavit with the court). However, we also suspended an attorney for sixty days. *See Liles*, 808 N.W.2d at 205, 207 (imposing a sixty-day suspension where an attorney, who had received a prior public reprimand for a different ethical violation, forged the signature of one of the witnesses on a will and filed it for probate).

In other cases, we imposed six-month suspensions. *See McGinness*, 844 N.W.2d at 459–60, 467 (imposing a six-month suspension where an attorney fabricated certificates of service to corroborate his lie that he had served discovery requests on opposing counsel and continued to lie during the district court's hearing on the opposing counsel's sanctions motion); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Lesyshen*, 585 N.W.2d 281, 286, 288 (Iowa 1998) (suspending an attorney's license for six months because, in addition to neglecting her client's lawsuit and having a prior public reprimand, the attorney forged her client's signature to the supplemental answers to interrogatories and falsely notarized the signature); *Comm. on Prof'l Ethics & Conduct v. Bauerle*, 460 N.W.2d 452, 453–54 (Iowa 1990) (imposing a six-month suspension where an attorney blindly followed his

client's instructions to backdate several documents and falsely notarized signatures).

In *Iowa Supreme Court Board of Professional Ethics & Conduct v. Rylaarsdam*, we suspended an attorney's license for six months for mainly two instances of fraud, among other violations. 636 N.W.2d 90, 91–93 (Iowa 2001). The attorney forged both of his clients' signatures on a petition to sell a shed belonging to an estate and forged one client's signature on two documents admitting claims filed in the estate. *Id.* at 91. Other than the forged signatures, the substance of all three documents was true. *Id.* The attorney then misrepresented to his clients that he had closed the estate. *Id.* One of the clients subsequently hired him for a different estate. *Id.* For this estate, the attorney completed a blank letter-of-appointment form and embossed the clerk of court's seal on it without knowledge or consent of the clerk. *Id.* He then misrepresented to his client that the estate had been opened. *Id.* After considering the attorney's cooperation with the Board, acknowledgment of both his ethical misconduct and necessity of a sanction, sincere remorse, depression, and lack of a prior disciplinary record, we concluded a six-month suspension was appropriate. *Id.* at 91–93.

Here, Barry's misconduct went beyond lying to his clients. Like the attorney in *Rylaarsdam*, "in an even more calculated and unscrupulous attempt to hide his neglect, [Barry] falsified a court document." *Id.* at 93. However, even worse than the attorney in *Rylaarsdam* who forged his clients' signatures, Barry forged a judge's signature by attaching a signature page bearing the judge's signature from a different case to a fraudulent dissolution decree. *See Thompson*, 732 N.W.2d at 868 (stating "a lawyer may feel a false sense of justification as a representative agent" when forging his or her client's

signature but it is more questionable that "a lawyer could ever possess even a momentary sense of justification in forging the signature of a judge on a court order").

In some cases, we imposed a harsher sanction than that imposed in *Rylaarsdam* and concluded three years was the appropriate length. *See In re Rickabaugh* (*Rickabaugh I*), 661 N.W.2d 130, 130–31, 133 (Iowa 2003) (per curiam) (suspending an attorney's license for three years for misconduct including fabricating the pleadings and forging a judge's signature); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Hansel*, 558 N.W.2d 186, 192 (Iowa 1997) (imposing a three-year suspension for conduct that included knowledge of a forgery); *Clauss*, 530 N.W.2d at 454–55 (imposing a three-year suspension where a lawyer with a past disciplinary record forged his wife's signature on a return of service, notarized the forged signature, and falsely stated under oath that his wife had signed the return in his presence); *see also Comm. on Prof'l Ethics & Conduct v. Wenger*, 469 N.W.2d 678, 679, 681 (Iowa 1991) (suspending a lawyer's license for three years because the lawyer offered false evidence and gave false testimony while under oath at a disciplinary hearing).

In some circumstances, we disbarred attorneys from the practice of law in this state. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Rickabaugh* (*Rickabaugh II*), 728 N.W.2d 375, 382 (Iowa 2007); *see also Stowe*, 830 N.W.2d at 741, 743 (revoking an attorney's license for forging his client's signature on two checks the attorney had stolen to transfer funds into his personal bank account and factoring into our disbarment decision the combination of the felony forgery convictions and conversion of client funds).

In *Rickabaugh II*, we revoked the license of the same attorney who was under scrutiny in *Rickabaugh I*. 728 N.W.2d at 382. Among other

serious ethical infractions, the attorney forged his client's signature on a court document, despite his previous discipline in *Rickabaugh I* for fabricating the pleadings and forging a judge's signature. *Id.* In light of multiple violations of our disciplinary rules and his "blatant disregard for his duty as an attorney to be honest and truthful[,]" we held disbarment would best serve both the public at large and the legal profession in particular. *Id.*

In the instant case, the commission weighed two cases that they found were most similar to Barry's conduct concerning the forged dissolution decree: *Rickabaugh I,* 661 N.W.2d 130, and *Thompson,* 732 N.W.2d 865. In *Rickabaugh I,* we suspended an attorney's license to practice law in Iowa for three years. 661 N.W.2d at 133. The Nebraska Supreme Court had disbarred the attorney after finding he accepted a legal matter he was not competent to handle, neglected the matter, failed to keep his clients advised of developments in the case, created fraudulent pleadings, and forged a judge's signature. *Id.* at 130–31. We issued a reciprocal discipline notice and order to which the attorney objected. *Id.* at 130.

In our review of the case, we accepted the factual findings from the Nebraska proceeding as conclusive. *Id.* at 131. We stated, "When combined with other serious misconduct, tendering a false document to the court may warrant disbarment in Iowa." *Id.* at 133. However, we reasoned the "[attorney's] action, fortunately, fell short of such fatal misconduct." *Id.* We weighed into our decision the "minor mitigating factor" that "there was no case in which to file the forged document" because of the attorney's neglect. *Id.* After considering similar misconduct by other Iowa lawyers, we suspended the attorney's license for three years. *Id.*

In *Thompson,* we suspended an attorney's license to practice law in Iowa for nine months. 732 N.W.2d at 869. An assistant county attorney prepared an order for hearing on the motion for waiver of juvenile court jurisdiction. *Id.* at 866. He then signed the name of a district court judge to the order without the judge's knowledge or authorization. *Id.* The attorney filed the order with the clerk of court. *Id.* In determining the appropriate sanction, we considered two aggravating factors and one mitigating factor. *Id.* at 868. First, we noted "the forgery was a bold, clear[,] and calculated act of dishonesty." *Id.* Furthermore, we stated,

> Unlike cases involving the forged signature of a client where a lawyer may feel a false sense of justification as a representative agent, it is hard to imagine how a lawyer could ever possess even a momentary sense of justification in forging the signature of a judge on a court order.

*Id.* Second, we took into account the attorney's previous ethical rule violations, including the alteration of a court document. *Id.* As for the single mitigating factor, we noted the attorney self-reported his conduct to the Board and stipulated to the commission that he had violated our ethical rules. *Id.* at 868–69.

Like in *Rickabaugh I,* the fact that Barry did not and could not file the court order is only a minor mitigating factor because there was no open case due to his lack of diligence. We note, however, Nebraska disbarred the attorney in *Rickabaugh I* and that case involved reciprocal discipline. Here, no jurisdiction has disbarred Barry and this case does not involve reciprocal discipline.

We see some differences between *Thompson* and Barry's case. Barry lacks the more colorful disciplinary history of the attorney in *Thompson,* whom we sanctioned in three instances, one of which included misconduct for correcting a typographical error on an original

document in a court file without permission. 732 N.W.2d at 866. However, Barry forged a dissolution decree, unlike the attorney in *Thompson*, who forged a scheduling order. *See id.* We agree with the commission "the legal nature and consequences to a scheduling order are significantly less than that of a dissolution of [a] marriage decree."

Moreover, in addition to attaching the signature page of a judge from another case to the fraudulent dissolution decree, Barry also replaced the case title and case number on the signature page, inserted the case number on the first page of the decree, and inserted file-stamp data on each of the four pages of the decree. Such action requires more forethought and strategizing than that of the attorney in *Thompson* who simply forged a judge's signature. Lastly, Barry perpetuated his falsehood for fourteen months while the attorney in *Thompson* was discovered within a short period of time. *See id.*

Lastly, *McGinness* is an informative case. 844 N.W.2d 456. In that case, an attorney "embarked on a course of dishonest conduct" by attaching fabricated certificates of service to two discovery requests he had never served to opposing counsel. *Id.* at 459. To fabricate the certificates of service, the attorney had photocopied an old certificate of service from his response to opposing counsel's discovery requests in the same case. *Id.* When opposing counsel confronted the attorney, the attorney lied that he had prepared and signed the discovery requests. *Id.* The attorney continued to embellish in his filed response to opposing counsel's motion for sanctions. *Id.* He went so far as to hire a handwriting expert to defend his position. *Id.* At the sanctions hearing, the attorney maintained his position and thus lied to the district court. *Id.* at 460.

In determining the appropriate sanction, we stated the attorney's persistence in continuing his lies was a "remarkable" factor that aggravated the sanction that we ought to impose. *Id.* at 466. We gave less weight to his remorse and cooperation because he expressed remorse and cooperated with the Board only after the district court had sanctioned him and had referred him to the Board. *Id.* at 467. We considered other mitigating factors such as his service to the community, no prior disciplinary history, and no substantial harm to the client. *Id.* After taking into account the aggravating and mitigating factors, we imposed a six-month suspension. *Id.*

Here, like the attorney in *McGinness,* Barry exhibited "remarkable persistence in pursuing his dishonest course[.]" *See id.* at 466. However, Barry continued his falsehood for fourteen months, a time period much longer than the length of the attorney's falsehood in *McGinness.* Although we do not know if the attorney in *McGinness* would have also perpetuated his falsehood for just as long as Barry did, the fact of the matter is that opposing counsel in *McGinness* swiftly confronted the attorney about the fabrication of the discovery requests and certificates of service, thereby cutting short the length of the attorney's deception. Moreover, more egregious than the attorney's misconduct in *McGinness,* Barry forged a judge's signature by attaching a signature page bearing the judge's signature from a different case to a fraudulent dissolution decree. As already mentioned, forgery of a judge's signature is a grave misrepresentation. Finally, unlike the misconduct of the attorney in *McGinness,* Barry's misconduct caused harm to his vulnerable client.

After a comparative analysis of *Rickabaugh I, Thompson,* and *McGinness* to the case at hand, we conclude the appropriate sanction for

Barry's ethical rule violations falls on the spectrum between the lengthy three-year suspension in *Rickabaugh I* and the six-month suspension in *McGinness.* Specifically, the appropriate sanction is closer to the nine months imposed in *Thompson.* However, before affirmatively concluding on the appropriate length of the sanction, we consider the mitigating and aggravating circumstances present in this case.

**A. Mitigating Factors.** In his August 6, 2015 letter to the Board, Barry accepted responsibility for his actions and expressed some degree of remorse. We have recognized that an attorney's acceptance or acknowledgment of some wrongdoing constitutes a mitigating circumstance. *Liles,* 808 N.W.2d at 207; *Rylaarsdam,* 636 N.W.2d at 91. Barry also cooperated with the Board, entered stipulations, and waived a hearing. Such actions mitigate the sanction we will impose for Barry's violations of our disciplinary rules. *Cf. Wenger,* 469 N.W.2d at 680 (noting the attorney's failure to cooperate with the committee amounted to an aggravating factor).

However, Barry's remorse and cooperation came on the coattails of the clerk of court's discovery of his fraudulent dissolution decree. As the commission and the Board reasoned, "[T]here is nothing to suggest that Barry was prepared to abandon his course of deception prior to the Clerk of Court and Iowa District Court Chief Judge's contact with Barry's law firm." In *McGinness,* we stated the attorney's remorse and cooperation came after the district court entered an order imposing sanctions and the Board contacted him concerning a complaint about his misconduct. 844 N.W.2d at 467. We reasoned "[t]he chronology tends to deflate consideration of remorse and cooperation as mitigating factors." *Id.*

Here, we agree with the commission that nothing in the record suggests Barry was prepared to abandon the path he was traversing but

for the impetus provided by the unraveling of his deception. Notwithstanding the chronology of Barry's self-reporting, because Barry expressed some level of remorse and cooperated with the Board, we find a deflated degree of mitigation.

Additionally, Barry self-reported his misconduct, although he delivered the letter to the Board after the clerk of court had contacted his law office inquiring about the dissolution file and it became apparent the end of his charade was just around the corner. Admittedly, his self-reporting is simultaneously self-serving and apologetic. Barry apologized and stated he understands there should and will be consequences. Nevertheless, his letter portrays himself as a victim, rather than the perpetrator, and paints the Millers as relentless clients who pressured him for updates on the case and made threats against him for his slow handling on the matter.

As a whole, the letter contains an oxymoronic, but all too familiar, combination of self-serving justifications and sincere explanations for his actions. Despite the ambivalent nature of his letter, we give some deflated credit to him for detailing his misconduct in the letter.[1] *See Thompson*, 732 N.W.2d at 866, 868–69 (finding an attorney's self-report as a mitigating circumstance even though the attorney notified the Board of his misconduct only after the judge whose signature was forged instructed him to report the matter to the Board). *But see Clauss*, 530 N.W.2d at 454 ("[The attorney's] sudden candor was prompted, not by his discovery of new facts, but by the knowledge of the imminent revelation of the actual facts.").

---

[1]Chief Judge Hoffmeyer reported Barry's misconduct to the Board in a letter dated August 7, 2015. However, according to the stipulations, Chief Judge Hoffmeyer telephoned the Board and later provided supporting documents. We are unsure of the date of this phone call. The Board received Barry's letter on August 6, 2015.

In addition, Barry performed community service at an orphanage in Haiti. *See McGinness*, 844 N.W.2d at 467 (recognizing service to the community as a mitigating factor). Additionally, Barry has been suffering from depression. Illness does not reduce the serious nature of Barry's ethical rule violations, but it influences the severity and type of discipline we will impose. Nevertheless, "we will not *excuse* ethical violations because of an attorney's ill health, emotional problems, personality disorders, or the general stress of a busy law practice." *Hansel*, 558 N.W.2d at 191.

We have recognized depression as a mitigating factor. *Thompson*, 732 N.W.2d at 868. In *Grotewold*, we stated "depression can take hold of a person without his or her knowledge or understanding of the need for treatment." 642 N.W.2d at 294. Furthermore, "these symptoms too often appear before the disease is diagnosed and treatment is sought." *Id.* at 295. If what he claims in his letter is true, Barry worked for the past few years with undiagnosed and untreated depression. This is an important mitigating factor. However, absent evidence of the relation between the depression and the misconduct, we cannot understand "the full extent of depression as a mitigating circumstance in the imposition of discipline." *Id.*

In his letter to the Board, Barry somewhat established a relationship between his depression and his ethical rule violations by explaining how his depression prevented him from pressing the "send" button after doing the substantive work because he "just became paralyzed and couldn't do it." Such an explanation explains his lack of diligence in filing the dissolution petition but loosely explains his misrepresentations to the Millers. *See id.* at 296 (stating the record contained plenty of evidence to explain the relationship between the

depression and the neglect of professional duties but reasoning the evidence did not explain the relationship between the depression and the false statements to the court, although acknowledging the two circumstances coexisted).

Moreover, Barry has not been receiving treatment from a licensed mental health professional. The record contains a letter from Rita Henry with Inner Prosperity and treatment records. Such information does not provide any details on Henry's credentials.

Furthermore, since self-reporting the matter to the Board in August 2015, Barry only attended seven counseling sessions with Henry and eight other sessions, such as "one-day healing intensive." In 2017, Barry only attended three counseling sessions, once in March, April, and May, respectively. In light of the fact that Barry claimed in his letter that the debilitating symptoms of depression adversely impacted his ability to work, like the commission, we express concerns about the adequacy of the frequency of counseling Barry received.

To be fair, at the time of his letter, Barry stated he was on the waiting list for inpatient treatment at the Turnaround House in Ojai, California. Although subsequent recovery efforts are important as a mitigating factor, we decline to speculate on the question of whether Barry is now receiving treatment at Turnaround House and, if not, whether he has recently sought help from a licensed health professional, such as a psychiatrist or psychologist. Accordingly, Barry's depression plays a minor mitigating role in the sanction we ought to impose.

Additionally, Barry's law office was in transition at the time of the Miller case because his father and uncle, both partners at the office, were in the process of retiring. Thus, Barry and his other law partner absorbed extra work. The stress of a law practice does not excuse

Barry's misconduct, but we do consider his stressful situation as a mitigating factor in determining the proper discipline. *See Weiland*, 885 N.W.2d at 215 (considering the attorney's testimony that his mother was in and out of the hospital, his car broke down during that time, he had issues with city inspectors and his apartment, and he was working on other time-consuming cases); *Wenger*, 469 N.W.2d at 680–81 (considering the attorney's increased workload because of his law practice's transition from a two-lawyer to a sole practitioner office, his new responsibility as the primary caretaker of his newborn child because of his wife's hospitalization, and his depressive disorder).

Lastly, Barry claimed he placed his license in inactive status following his self-reporting. We view an attorney's voluntary cessation of law practice as a mitigating factor. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Lickiss*, 786 N.W.2d 860, 871 (Iowa 2010).

**B. Aggravating Factors.** We now turn to the aggravating factors. We emphasize "[w]hat should dictate the sanction in this case is the nature, number, and seriousness of the ethical violations[.]" *Hansel*, 558 N.W.2d at 192. Barry's misconduct implicates "two core values of our profession": "honesty and integrity[.]" *Id.*

Misrepresentation is a "grave and serious breach of professional ethics." *Rickabaugh II*, 728 N.W.2d at 382 (quoting *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Stein*, 603 N.W.2d 574, 576 (Iowa 1999)). We have repeatedly recognized "[f]undamental honesty is the base line and mandatory requirement to serve in the legal profession." *Bauerle*, 460 N.W.2d at 453. In fact, "the paramount need for lawyers to be trustworthy" forms the foundation for "[t]he whole structure of ethical standards." *Id.* Thus, Barry's misrepresentation of the status of the dissolution case to the Millers and forgery of a judge's signature

constitute serious breaches of the fundamental concepts we hold dear to our justice system. *See Stowe*, 830 N.W.2d at 743 ("Forgery strikes at the very heart of an attorney's trustworthiness and honesty."). When our court officers circumvent the truth, whether in their own interests or for the sake of their clients' interests, they damage the court system itself and the public's confidence in the court system.

Moreover, "[a] lawyer has a very special responsibility for candor and fairness in all his dealings with a court" because "[a]bsent mutual trust and confidence between a judge and a lawyer—an officer of the court—the judicial process will be impeded and the administration of justice frustrated." *Lesyshen*, 585 N.W.2d at 288 (quoting *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Plumb*, 546 N.W.2d 215, 217–18 (Iowa 1996)).

Even in light of mitigating circumstances, "[t]he controlling consideration is the absolute necessity for lawyers to be absolutely honest." *Clauss*, 530 N.W.2d at 455. In fact, cases involving false statements or misrepresentations to the court usually result in more severe disciplinary sanctions. *West*, 901 N.W.2d at 528. Additionally, as we stated in *Thompson*, we consider forging a judge's signature as a more serious crime than forging a client's signature. *See* 732 N.W.2d at 868.

Furthermore, Barry's perpetuation of his deception "is a remarkable aggravating factor." *McGinness*, 844 N.W.2d at 466 (stating the attorney repeatedly lied to opposing counsel and to the district court and, despite having a number of opportunities to withdraw from his deception, he "simply dug himself into a progressively deeper ethical pit"). In fact, forging a fraudulent dissolution decree was "merely the last step in a dishonest scheme" that lasted for fourteen months. *Iowa*

*Supreme Ct. Att'y Disciplinary Bd. v. Kallsen*, 814 N.W.2d 233, 238 (Iowa 2012).

Prior disciplinary action is a significant aggravating factor. *Weiland*, 885 N.W.2d at 215; *see also Lesyshen*, 585 N.W.2d at 288 (considering the attorney's prior public reprimand). "This is particularly true when the current rule violations involve the same type of conduct as the prior conduct subject to discipline." *Weiland*, 885 N.W.2d at 215; *accord Thompson*, 732 N.W.2d at 866, 868 (noting the similarity between the attorney's most recent forgery and his history of discipline, particularly prior misconduct involving alteration of a court document).

In 2013, Barry failed to file an appellate proof brief and designation of appendix, causing the dismissal of his client's appeal. The Board admonished Barry for neglecting his client's appeal, in violation of rules 32:1.3 (lack of diligence) and 32:3.2 (failure to expedite litigation). It is apparent that our past admonition has not improved Barry's conduct in pursuing his client's matters with diligence. We note this prior misconduct involved no misrepresentations.

Harm to a client is also an aggravating factor. *West*, 901 N.W.2d at 528; *Weiland*, 885 N.W.2d at 215. Miller's dissolution took well over fourteen months to reach completion even though Barry testified the dissolution was "simple." Miller's new counsel finalized the dissolution in just a few months.

Lastly, vulnerability of the client is an aggravating factor. *Weiland*, 885 N.W.2d at 215. Barry stated in his letter that Miller's wife was abusive toward Miller, and Miller wanted her to leave him alone. Additionally, Miller has been low functioning since birth. Miller's brothers were present to help him throughout the dissolution process. Barry knew of Miller's situation and his vulnerability, yet deceived the

Millers and failed to act with diligence in filing the dissolution petition. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Stowers*, 626 N.W.2d 130, 133 (Iowa 2001) ("Each time an attorney betrays a client's trust by failing to fulfill professional obligations, and then compounds the damage by intentionally concealing the failure, public confidence in our profession is diminished.").

**C.  Appropriate Sanction.**  We find Barry's misconduct is more egregious than those in *McGinness* and *Thompson* because of the continuous nature of his misconduct over a long period of time.  Rather than owning up to his lack of diligence, Barry covered it up by forging a divorce decree.  His actions not only caused the client but also the staff of the clerk's office to expend time and resources to investigate Barry's deception.  Furthermore, Barry took advantage of a client who was in a vulnerable position.  However, we find his misconduct is less egregious than that in *Rickabaugh I.*  Accordingly, we suspend Barry's license to practice law in Iowa for an indefinite period with no possibility of reinstatement for one year from the date of filing of this opinion.  As an additional requirement for reinstatement, Barry must provide an evaluation from a licensed health care professional verifying his fitness to practice law.

**V.  Disposition.**

We suspend Barry's license to practice law in Iowa for an indefinite period with no possibility of reinstatement for one year from the date of filing of this opinion.  The suspension applies to all facets of the practice of law.  *See* Iowa Ct. R. 34.23(3).  Barry must comply with the notification requirements of Iowa Court Rule 34.24.  To establish his eligibility for reinstatement, Barry must file an application for reinstatement meeting all applicable requirements of Iowa Court Rule

34.25 and provide an evaluation from a licensed health care professional verifying his fitness to practice law.  We tax the costs of this action to Barry in accordance with Iowa Court Rule 36.24(1).

**LICENSE SUSPENDED.**