# IN THE SUPREME COURT OF IOWA

No. 13–1213

Filed March 21, 2014

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Appellee,

vs.

**JEFFREY K. MCGINNESS,**

Appellant.

On review of the report of the Grievance Commission of the Supreme Court of Iowa.

The Grievance Commission of the Supreme Court of Iowa recommends the respondent receive a six-month suspension. **LICENSE SUSPENDED.**

Gregory M. Lederer of Lederer Weston Craig PLC, Cedar Rapids, for appellant.

Charles L. Harrington and Teresa A. Vens, Des Moines, for appellee.

**APPEL, Justice.**

In this case, we review a recommendation of the Grievance Commission of the Supreme Court of Iowa to suspend the license of Jeffrey K. McGinness for six months because he falsified certificates of service attached to discovery requests sent to opposing counsel and then defended the validity of the certificates in judicial proceedings. Following a hearing on a complaint filed by the Iowa Supreme Court Attorney Disciplinary Board, the commission found McGinness violated Iowa Rules of Professional Conduct 32:3.3(a)(1) (knowingly making false statements to a tribunal), 32:8.4(c) (conduct involving dishonesty, fraud, deceit, or misrepresentation), and 32:8.4(d) (conduct prejudicial to the administration of justice). McGinness appealed the commission's recommended sanction. McGinness admits he engaged in the misconduct as alleged by the Board, but argues his license should not be suspended for more than three months.

Upon our de novo review, we agree with the commission that the Board established by a convincing preponderance of the evidence that McGinness violated rules 32:3.3(a)(1), 32:8.4(c), and 32:8.4(d). We also agree with the commission that McGinness should be suspended from the practice of law with no possibility of reinstatement for six months.

## I. Factual and Procedural Background.

The facts are not disputed. McGinness attended the University of Iowa as an undergraduate where he was a national champion wrestler. After graduating from the University's law school in 2001, he passed the Illinois bar examination and was employed by a law firm in Chicago. He returned to Iowa in 2007, obtained an Iowa law license through reciprocity, and was employed by a prominent eastern Iowa law firm.

In 2012, McGinness represented the plaintiff in a civil action filed in the Iowa District Court for Polk County. His client's deposition had been scheduled for June 18. Five days before the scheduled deposition, McGinness realized he had not served discovery requests on opposing counsel. McGinness believed his failure to obtain responses from the opposing party prior to his client's deposition was a strategic mistake.

To cure his oversight, McGinness embarked on a course of dishonest conduct he will regret for the remainder of his legal career. Instead of seeking an accommodation from opposing counsel or simply proceeding with the scheduled deposition, he decided to lie about his failure to serve discovery. McGinness began by emailing opposing counsel demanding responses to the discovery requests by the end of the next day "to avoid the need to reschedule the deposition." When opposing counsel responded that he had not received any discovery requests from McGinness, McGinness replied via an email to which he attached two discovery requests he had purportedly served March 21. The discovery requests contained McGinness's signature as well as purported certificates of service indicating the requests had been served March 21 by U.S. Mail. The certificates of service appeared to have been signed by McGinness's administrative assistant.

Though McGinness may have prepared the discovery requests at some prior time, McGinness had not, in fact, served opposing counsel with those discovery requests on March 21. When he realized his error, McGinness fabricated false certificates of service by photocopying an old certificate of service from his response to opposing counsel's discovery requests in the same case. McGinness attached the false certificates to the discovery requests and sent the package to opposing counsel.

Finding the circumstances suspicious, opposing counsel examined electronic data embedded in the discovery documents received from McGinness. Opposing counsel determined the documents had been created in June. Documents created in June obviously were not served in March. Opposing counsel then hired a handwriting expert. After comparing the certificates of service on the discovery documents emailed by McGinness with the certificate of service on McGinness's response to opposing counsel's discovery requests, the expert concluded the former were photocopies of the latter.

Opposing counsel confronted McGinness with his beliefs McGinness had not served the discovery requests in March and the certificates of service were falsified. To support his allegations, opposing counsel noted McGinness had never before mentioned the discovery requests despite repeated communications about discovery, the documents themselves indicated they were not created in March, and inspection of the documents revealed the signatures were identical. McGinness did not fess up; he embellished. He told opposing counsel he specifically recalled preparing and signing the discovery requests at the same time he responded to opposing counsel's discovery requests and may have served them the same day. He further informed opposing counsel that, because he did not sign the certificate of service, he could not speak to the allegation of identical signatures and that his secretary, who signs many certificates of service each week, had no recollection of signing it.

Opposing counsel filed a motion for sanctions with the district court. Once again, McGinness embellished instead of fessing up. McGinness filed a response with the district court in which he maintained neither he nor his assistant photocopied nor duplicated

previously used certificates of service. McGinness added a new layer to his fraudulent conduct by hiring an expert at his own expense to defend the position he knew to be false. McGinness represented to the district court that his own expert found the signatures were not identical. Finally, McGinness attempted to discredit opposing counsel's theory that he was motivated by a desire to delay the deposition.

McGinness communicated with his client about the pending sanctions motion. In an email, McGinness noted opposing counsel had alleged McGinness had fabricated certificates of service dates in an attempt to delay the client's deposition. McGinness informed his client that he did "not take these allegations lightly" and that he had discussed the motion with opposing counsel. McGinness also informed his client he had hired, at his own expense, "a forensic document examiner who is willing to testify that the certificates are not fabricated."

The district court scheduled a hearing on the sanctions motion. At the hearing, McGinness once again chose not only to maintain the lie, but to embellish. He insisted the certificates of service were not fabrications. He also attacked the conclusions of opposing counsel's handwriting expert. After the district court expressed its opinion to McGinness it did not think it needed a handwriting expert to see the fabricated certificates of service matched the one on the response to opposing counsel's discovery requests, McGinness asserted there was no evidence to explain why the certificates of service were identical. McGinness acknowledged his administrative assistant's signature was on the certificates of service, but stressed that she signs a significant number of documents each week. He further stressed that he has multiple administrative assistants and that any of them could have prepared the documents.

The district court rejected McGinness's now elaborate deceit. The district court found McGinness intentionally and knowingly affixed false certificates of service to discovery requests to cause unnecessary delay in the progression of the litigation. The district court further noted, "McGinness's behavior is so shocking and egregious that it is hard even to know what to say about it." The district court continued, "It is deeply disappointing to find that a member of the bar has engaged in such elaborate, calculated, and premeditated deceit." The district court sanctioned McGinness pursuant to Iowa Rule of Civil Procedure 1.413(1). The district court ordered McGinness to pay $5152 to opposing counsel and $2348 to the Iowa Judicial Branch.[1] The district court forwarded a copy of the sanctions order to the state court administrator.

After receiving the district court order, McGinness disclosed his conduct to his law firm. While a senior partner testified he urged McGinness to report his misconduct to the Board, McGinness testified he had received an inquiry from the Board shortly after he received the court order, which nullified his ability to self-report. McGinness's firm told McGinness he had betrayed their trust. At this point, McGinness voluntarily withdrew from the firm and began a solo practice in Iowa City. While expressing shock at McGinness's behavior, at least one senior partner regarded his conduct as an aberration and referred business to McGinness as a solo practitioner.

After receiving a complaint from the district court, the Board requested a response from McGinness. McGinness filed with the Board a

---

[1]A court may order the amount of a monetary sanction that exceeds the amount of direct financial injury to the harmed litigants to be paid to the judicial system to avoid any party from receiving a windfall and to at least partially reimburse the judicial system for unnecessary costs incurred. *Roewedder v. Anderson*, 814 N.W.2d 585, 592–93 (Iowa 2012).

letter in which he admitted he engaged in the alleged misconduct and expressed remorse for his actions. In particular, McGinness cited his "extreme disappointment" in himself and recognized his actions reflected "a severe lapse in judgment." Acknowledging there was no excuse for his actions, McGinness stated that in falsifying the certificates of service he was "motivated by a misguided loyalty and attempt to protect a client" and that instead he should have admitted the oversight and requested an extension. McGinness further noted his belief that submitting his client for a deposition without the benefit of the discovery responses could have compromised his client's case. Finally, he noted that while it would take significant time to regain the lost trust of his friends and law partners, he believed the disciplinary process and the process of mending damaged relationships would make him a better person and attorney.

After receiving McGinness's response, the Board filed a complaint with the commission alleging his conduct violated Iowa Rules of Professional Conduct 32:3.3(a)(1), 32:8.4(c), and 32:8.4(d). At the subsequent hearing, McGinness again admitted to engaging in the misconduct and expressed his remorse. McGinness offered live testimony and affidavits from a senior partner in his former firm, an administrator at the University of Iowa College of Law, a family friend, and other lawyers as character witnesses. McGinness offered evidence showing he had served on a local school board, local municipal boards, and in various organizations and had coached wrestling, soccer, and baseball.

Based on the undisputed evidence, the commission found McGinness violated rules 32:3.3(a)(1), 32:8.4(c), and 32:8.4(d). The commission determined aggravating factors included McGinness's failure to self-report, repeated failure to tell the truth, and failure to turn to the

numerous friends and colleagues comprising his support system for advice. The commission also noted the presence of several mitigating factors, including McGinness's sincere and straightforward admission to the commission, his lack of prior discipline, and his community service. In light of the infractions, the commission recommended this court suspend McGinness's license to practice law for six months.

## II. Standard of Review.

We review the record before the commission de novo. Iowa Ct. R. 35.11(1); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Liles*, 808 N.W.2d 203, 205–06 (Iowa 2012). The Board must prove misconduct by a convincing preponderance of the evidence. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Earley*, 774 N.W.2d 301, 304 (Iowa 2009). Proof by a convincing preponderance of the evidence is a more demanding standard than proof by preponderance of the evidence, but less demanding than proof beyond a reasonable doubt. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Adams*, 809 N.W.2d 543, 545 (Iowa 2012). We give respectful consideration to the commission's finding of fact and recommended sanction, but we are not bound by them. *Earley*, 774 N.W.2d at 304.

## III. Discussion.

## A. Ethical Violations.

1. *Introduction.* We begin our substantive review of this matter by determining whether McGinness engaged in misconduct under our ethical rules. Although the facts are largely undisputed, we still independently determine whether the commission's determination that McGinness violated our rules of ethics are supported in fact and law. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. McCarthy*, 814 N.W.2d 596, 601 (Iowa 2012) (noting that even when parties enter into a stipulation of

facts and ethical violations, this court must still determine whether a violation occurred).

2. *Dishonest, fraudulent, deceitful, or misrepresentative conduct.* Iowa Rule of Professional Conduct 32:8.4(c) provides that "[i]t is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit, or misrepresentation." To violate this rule, a lawyer must act with some level of scienter, which means the misrepresentation must be more than a negligent misrepresentation. *E.g.*, *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Netti*, 797 N.W.2d 591, 605 (Iowa 2011). A lawyer may violate this rule by making a misrepresentation to opposing counsel, *see, e.g.*, *Comm. on Prof'l Ethics & Conduct v. Chipokas*, 493 N.W.2d 414, 418 (Iowa 1992) (finding a lawyer violated the predecessor rule, Iowa Code of Professional Responsibility for Lawyers DR 1–102(A)(4), by misrepresenting to opposing counsel that he had authority to settle for a specific amount), or to the court, *see, e.g.*, *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Schall*, 814 N.W.2d 210, 213–14 (Iowa 2012) (finding a violation where a lawyer filed a written arraignment and plea of not guilty after making an unauthorized alteration to the form to waive speedy trial, and after signing it as an attorney falsely representing he had discussed the right to a speedy trial with his client and as a notary falsely representing his client had signed the document in his presence). We found a violation of the predecessor to rule 32:8.4(c), DR–102(A)(4), when a lawyer, in an attempt to conceal his neglect, falsely certified on his combined certificate that he had several days earlier served a combined certificate on opposing counsel, mailed it to the clerk of the supreme court, and personally delivered it to the district court clerk. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Stein,* 586 N.W.2d 523, 525–26 (Iowa 1998).

As in *Stein,* McGinness intentionally made repeated misrepresentations of material fact to opposing counsel. He photocopied old certificates of service in an attempt to deceive opposing counsel into believing McGinness had served him with discovery requests when McGinness had not done so. When confronted about the matter by opposing counsel, McGinness attempted to cover his tracks with more fabrication. Accordingly, we find the Board established by a convincing preponderance of the evidence that McGinness violated rule 32:8.4(c).

3. *Candor toward the tribunal.* Iowa Rule of Professional Conduct 32:3.3(a)(1)(A) provides that "[a] lawyer shall not knowingly . . . make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer." Because the lawyer must knowingly make the false statement, the lawyer must have "actual knowledge of the fact in question." Iowa R. Prof'l Conduct 32:1.0(f) (defining the term "knowingly").

Our cases reveal that false statements to the court can be made both orally and in writing. We have found violations when a lawyer filed falsely notarized documents with the court, when a lawyer forged a guilty plea for a defendant he was representing, and when a lawyer filed a document with the court misrepresenting the marital status of a decedent. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Palmer,* 825 N.W.2d 322, 325 (Iowa 2013) (falsely notarized document); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kallsen,* 814 N.W.2d 233, 238 (Iowa 2012) (forged guilty plea); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Casey,* 761 N.W.2d 53, 60 (Iowa 2009) (misrepresentation of marital status of decedent). We have also found a violation of this rule when a lawyer orally made a false statement to the court. *See Iowa Supreme Ct. Att'y*

*Disciplinary Bd. v. Hearity*, 812 N.W.2d 614, 621 (Iowa 2012) (false statement that lawyer had not received notice of his suspended license).

We have no trouble finding McGinness violated rule 32:3.3(a)(1). In his response to the motion for sanctions, which McGinness signed and filed with the court, McGinness stated, "Neither present counsel nor his assistant photocopied or duplicated previously used certificates of service." He further stated that when he looked in his discovery file to verify he had responded to opposing counsel's discovery requests, he noted the presence of his discovery requests bearing a March 21 service date.

One week later, at the hearing on the motion for sanctions, McGinness presented an argument that opposing counsel had failed to prove the certificates of service were photocopies. When the district court informed McGinness it did not need a handwriting expert to see the certificates of service were the same and asked McGinness for an explanation, McGinness indicated he was unable to find any explanation based upon his review of his firm's document management system and his discussions with his assistant. He continued to hide from the district court what he knew to be the truth.

Given the undisputed facts and McGinness's admissions, we find the Board proved McGinness violated rule 32:3.3(a)(1) in both his written filing with the district court and his oral statements to the district court by a convincing preponderance of the evidence.

4. *Conduct prejudicial to the administration of justice.* Iowa Rule of Professional Conduct 32:8.4(d) provides that "[i]t is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice." Conduct violates this rule if "it impedes 'the efficient and proper operation of the courts or of ancillary systems

upon which the courts rely.' " *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Taylor*, 814 N.W.2d 259, 267 (Iowa 2012) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Van Ginkel*, 809 N.W.2d 96, 102–03 (Iowa 2012)). A lawyer violates this ethical rule by engaging in misconduct that impedes the efficient operation of the courts and wastes judicial resources. *Kallsen*, 814 N.W.2d at 238–39.

We also have no trouble finding a violation of rule 32:8.4(d) on the undisputed facts. McGinness caused the district court to schedule a completely unnecessary hearing about a collateral matter completely unrelated to the merits of the underlying lawsuit. By persisting in his course of conduct, he plainly impaired the efficient operation of the court system and caused a waste of judicial resources. Therefore, we find the Board proved a violation of rule 32:8.4(d) by a convincing preponderance of the evidence.

**B. Sanction.**

1. *Overview of sanctions in disciplinary cases.* In considering an appropriate sanction, this court considers all the facts and circumstances, including the nature of the violations, the attorney's fitness to practice law, deterrence, the protection of society, the need to uphold public confidence in the justice system, and the need to maintain the reputation of the bar. *E.g., Iowa Supreme Ct. Att'y Disciplinary Bd. v. Dunahoo*, 799 N.W.2d 524, 534–35 (Iowa 2011). We also consider mitigating and aggravating circumstances. *E.g., Van Ginkel*, 809 N.W.2d at 109; *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Ireland*, 748 N.W.2d 498, 502 (Iowa 2008). The court gives respectful consideration to the findings and recommendations of the commission, but "may impose a greater or lesser sanction than that recommended by the commission."

*Iowa Supreme Ct. Att'y Disciplinary Bd. v. Wheeler*, 824 N.W.2d 505, 509–10 (Iowa 2012).

Though a one-size-fits-all approach to professional discipline is inappropriate, we seek to "achieve consistency with prior cases when determining the proper sanction." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Templeton*, 784 N.W.2d 761, 769 (Iowa 2010). We recognize, however, that "consistency is achieved through the difficult process of carefully considering and balancing all the relevant circumstances in each case, not by lumping conduct into broad categories of sanctions." *Wheeler*, 824 N.W.2d at 511. Further, as noted by Board counsel at the hearing before the commission, we rarely encounter cases where the exact same conduct has occurred previously.

2. *Positions of the parties.* In this appeal, McGinness largely falls on his sword. He unequivocally concedes the record supports the ethics violations we have found. He further recognizes "fundamental honesty is the base line and mandatory requirement to serve in the legal profession." *Kallsen*, 814 N.W.2d at 239 (internal quotation marks omitted). He does not attempt to explain away his misconduct by blaming others or citing vague mitigating circumstances that usually fail to persuade.

Yet, McGinness asserts a six-month suspension is too harsh. He notes that while we have imposed six-month suspensions in other cases involving false representations to opposing counsel and to the court, these cases often involve other aggravating factors not present in this case or a lack of mitigating factors. He notes, for example, that in *Iowa Supreme Court Attorney Disciplinary Board v. Wagner*, 768 N.W.2d 279 (Iowa 2009), an attorney who ultimately received a six-month suspension for his conduct in a probate matter not only made numerous

misrepresentations to the district court, but also neglected the matter, prematurely took probate fees, failed to deposit unearned fees in his trust account, failed to promptly return unearned fees, and failed to cooperate with the disciplinary board. McGinness notes that in his case, these additional violations are not present. He uses similar reasoning to distinguish other misrepresentation cases involving six-month suspensions. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Isaacson,* 750 N.W.2d 104, 110 (Iowa 2008) (six-month suspension for misrepresentations to partner and to the disciplinary board in addition to trust account violations); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Powell,* 726 N.W.2d 397, 408 (Iowa 2007) (six-month suspension for harm to clients in addition to misrepresentations to clients for purpose of obtaining payment of fees).

McGinness further argues an assessment of the balance of mitigating and aggravating circumstances should tip this court in the direction of a suspension of less than six months. McGinness asserts that while he committed multiple offenses, they did not arise out of separate, unrelated incidents but were, in essence, part of a single course of conduct. McGinness challenges the assertion of the commission that the existence of a "strong support" system in his firm was an aggravating factor. He points out that he has suffered a significant financial loss as a result of court sanctions and his departure from a prestigious law firm. He further asserts that he has suffered substantial intangible losses to his professional and personal reputation. He notes that he will essentially have to start over in his legal practice once any suspension has run its course.

The Board, in contrast, urges us to follow the recommendation of the commission and suspend McGinness's license for six months. The

Board cites a number of cases involving misrepresentation where a six-month suspension was imposed. For instance, in *Committee on Professional Ethics & Conduct v. Bauerle*, 460 N.W.2d 452, 453 (Iowa 1990), we suspended the license of an attorney who altered and backdated documents for a client and falsely notarized them even though the attorney had an "otherwise excellent record." Similarly, in *Iowa Supreme Court Board of Professional Ethics & Conduct v. Rylaarsdam*, 636 N.W.2d 90, 91–93 (Iowa 2001), we suspended an attorney for six months for misrepresentations when the attorney had no prior disciplinary history, received no financial benefit, was sincere and remorseful, accepted responsibility, and made no attempt to blame others.

The Board recognizes the taking of responsibility and remorse are mitigating factors, but points to the presence of certain aggravating factors. The Board notes that McGinness lied on numerous occasions to both opposing counsel and the district court and that McGinness went so far as to hire an expert in an attempt to cover his falsehoods. Further, the Board notes McGinness did not self-report to the Board.

3. *Analysis of appropriate sanction.* At the outset, we note the unusual nature of this case. McGinness did not serve the discovery requests in an optimal fashion, but McGinness's neglect to serve the requests was hardly an insurmountable problem for him or his client. McGinness could have asked for an accommodation from the opposing lawyer, sought protection from the court, or simply taken additional time to thoroughly prepare his client for the scheduled deposition. Moreover, McGinness's failure to serve the discovery requests might not have been entirely to his client's disadvantage, as the process of responding to discovery requests can sharpen opposing counsel's knowledge of the case

and lead to a more informed interrogation during the deposition. McGinness's solution—a course of unethical conduct—is striking in light of the minor problem he faced. In any event, we note, as McGinness now recognizes, that "honesty is the base line and mandatory requirement to serve in the legal profession." *Kallsen*, 814 N.W.2d at 239 (internal quotation marks omitted). We expect honesty in all aspects of the practice of law. There can be no doubt McGinness fell far short of what we expect of our lawyers, day in and day out, who practice law in this state.

Our cases show a range of sanctions for misconduct involving dishonesty where lawyers have made misrepresentations. *See, e.g., id.* at 240 (one-year suspension for forging guilty plea document); *Van Ginkel*, 809 N.W.2d at 110–11 (two-month suspension for filing interlocutory report with a false statement and other violations); *Bauerle*, 460 N.W.2d at 454 (six-month suspension for alteration and backdating of partnership documents with false notarization); *see also Iowa Supreme Ct. Att'y Disciplinary Bd. v. Rickabaugh*, 728 N.W.2d 375, 378, 382 (Iowa 2007) (revoking the license of a lawyer who made multiple misrepresentations, including forging an executor's name on a probate report submitted to the court, after the lawyer had been previously suspended for forging a judge's signature). Further, as pointed out by McGinness, a number of our disciplinary cases involving dishonesty or misrepresentation and resulting in six-month suspensions involve additional unethical conduct. *See Wagner*, 768 N.W.2d at 281 (six-month suspension for misrepresentations as well as neglect and other violations); *Powell*, 726 N.W.2d at 408 (six-month suspension for misrepresentation and various other disciplinary violations); *Stein*, 586 N.W.2d at 525–26 (six-month suspension for intentional

misrepresentations and neglect). In the end, the level of sanction is individually crafted based upon the nature of the violation and the mitigating and aggravating circumstances, to which we now turn.

Surely the persistence of McGinness in perpetuating his falsehood is a remarkable aggravating factor. This case does not involve an isolated false statement, in itself a serious offense. *See Van Ginkel*, 809 N.W.2d at 111. Instead, McGinness repeatedly lied to opposing counsel and to the district court. He also attempted to justify his conduct in communications with his client. McGinness had numerous opportunities to withdraw from his perilous course, but instead simply dug himself into a progressively deeper ethical pit. We have not regarded such repeated misconduct as irrelevant because it is part of an ongoing unethical course of conduct. *See Kallsen*, 814 N.W.2d at 238 (noting filing of forged plea agreement was "merely the last step in a dishonest scheme"); *Rylaarsdam*, 636 N.W.2d at 93 (noting in imposing a six-month suspension that "Rylaarsdam's misconduct went beyond lying to clients; he actually forged his clients' signatures and, in an even more calculated and unscrupulous attempt to hide his neglect, falsified a court document"). McGinness did not stop digging until after the district court entered an order imposing sanctions and notified the Board. At this point, McGinness was left, almost literally, with no remaining options. Only when cornered did McGinness abandon his dishonest scheme.

The commission also believed McGinness's failure to self-report was an aggravating factor. McGinness claimed he received the letter from the Board shortly after receiving the sanctions order. The sanctions order indicates it had been forwarded to the state court administrator. McGinness could have terminated his conduct, of course, and self-reported prior to the district court's ruling. He did not do so. On the

other hand, once he received the district court's ruling that was forwarded to judicial branch authorities, it was reasonable for McGinness to assume the matter was already reported. Perhaps he should have self-reported anyway, but after the district court's ruling, any self-reporting would be more self-serving than material. We view the root problem here as not so much McGinness's failure to report his misconduct after the district court's ruling, but instead McGinness's remarkable persistence in pursuing his dishonest course, which we have already identified as an aggravating factor in this case.

The commission found the presence of a support system surrounding McGinness was an aggravating factor. McGinness did have ready access to experienced lawyers to help him work through problems of legal practice. When he realized he had failed to timely serve discovery, he could have consulted other more experienced lawyers in the firm regarding the best method of handling the problem. Certainly a trip down the hall and a consultation with a senior attorney would have led to a different result in this case. Yet, the failure to access a support system might have more bearing in a borderline case where a conscientious but inexperienced lawyer would seek good advice on a difficult ethical dilemma. In this case, even an inexperienced lawyer would know that the path chosen violated our ethical rules. We view the problem here not so much as a failure to access a mentor but more as a profoundly wrong judgment any lawyer should avoid regardless of the presence of a support system.

We now turn to mitigating factors. It is true, of course, that McGinness expressed remorse and cooperated with the Board, which are potentially mitigating factors. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Khowassah,* 837 N.W.2d 649, 657 (Iowa 2013) (cooperation with

the disciplinary board); *In re Meldrum*, 834 N.W.2d 650, 654 (Iowa 2013) (remorse as mitigating factor). McGinness's remorse and cooperation, however, arose only after the district court entered its order imposing sanctions and he was contacted by the Board regarding a complaint about his misconduct. Without the impetus provided by the district court's sanctions order and referral of the matter to the Board, there is nothing in the record to suggest McGinness was prepared to abandon his deception. The chronology tends to deflate consideration of remorse and cooperation as mitigating factors.

There are, however, other mitigating factors. In particular, we note McGinness has an exemplary history of service to the community. We have recognized such service as a mitigating factor, *see, e.g., Iowa Supreme Ct. Att'y Disciplinary Bd. v. Ackerman*, 786 N.W.2d 491, 497–98 (Iowa 2010) (citing extensive community service as a mitigating factor), and we take it into account in this case. We also note that McGinness has no prior disciplinary history. *See, e.g., Iowa Supreme Ct. Att'y Disciplinary Bd. v. Bieber*, 824 N.W.2d 514, 527 (Iowa 2012) (lack of a prior disciplinary record regarded a mitigating factor). Finally, the record establishes no substantial harm to the client, although the need to find successor counsel was certainly an inconvenience. *See Van Ginkel*, 809 N.W.2d at 110 (lack of harm to client a mitigating factor).

In the end, however, we find the commission's recommendation of a six-month suspension is appropriate. The seriousness of the violation simply outweighs, in our judgment, the mitigating circumstances. Our citizens generally, and this court particularly, rely upon the honesty and integrity of lawyers to ensure the fair operation of our adversary system of justice. In the arena of civil discovery, the honesty of lawyers is an essential component. While McGinness's conduct may be an

extraordinary one-time occurrence that is out of character for him, we must protect the integrity of the judicial system and the lawyers who work within it.

**IV. Conclusion.**

For the above reasons, we suspend McGinness's license to practice law in this state with no possibility of reinstatement for six months from the date of this opinion. The suspension applies to all facets of the practice of law, as provided by Iowa Court Rule 35.13(3), and requires McGinness to notify his clients, as provided by Iowa Court Rule 35.23. Upon any application for reinstatement, McGinness must establish that he has not practiced law during the suspension period and that he has complied with the requirements of Iowa Court Rule 35.14. The costs of this proceeding are assessed to McGinness pursuant to Iowa Court Rule 35.27(1).

**LICENSE SUSPENDED.**

Waterman and Mansfield, JJ., take no part.