WATERMAN, Justice (concurring in part and dissenting in part).
I respectfully dissent from the majority's six-month sanction as too lenient for this Chicago attorney whose own lies and the lies told by his clients at his direction caused considerable harm to the opposing party, his own clients, and our court system. I would extend the injunction to at least one year as recommended by the Iowa Supreme Court Grievance Commission and the Iowa Supreme Court Attorney Disciplinary Board.
The majority correctly concludes that Paul Caghan violated our disciplinary rules prohibiting intentionally false statements *609 to the court, frivolous claims, and conduct prejudicial to the administration of justice. But the majority's otherwise thorough review of the underlying litigation omits salient observations by the district court judge and fails to properly analyze our precedent on sanctions. The majority rests its six-month sanction on several cases involving less egregious attorney misconduct and lacking the harm to the victim and clients present here. I will begin with some choice words by the judge tasked with adjudicating the fraud action Caghan filed.
The district court found the claim by Caghan's clients that they were unaware of the Scott County foreclosure action until November 2016 was "demonstrably untrue." The judge said this about the fake fraud claims Caghan invented and prosecuted:
[W]ith respect to the so-called "phony court orders," the Court finds these allegations to be completely unsupported and frivolous. The [consent order], signed by Plaintiffs, was a condition of the Forbearance Agreement. Plaintiffs signed the Consent Order in April of 2014, as was required by the Forbearance Agreement. Plaintiffs were represented by counsel at that time. It is, quite frankly, ridiculous for Plaintiffs to come back two and a half years later and allege that they were under the impression that the consent order which they had signed in connection with the Forbearance Agreement was a "phony court order" that Defendants used to trick them into thinking a judge had ordered Plaintiffs to hand over the Hotel. This theory of liability on Plaintiffs['] behalf is a complete fabrication without a shred of evidence in support thereof.
The district court granted the bank's motion for sanctions, finding that the affidavits Caghan's clients filed resisting summary judgment "were made falsely and in bad faith." The court stated,
Plaintiffs and [their] counsel said what needed to be said in order to survive summary judgment without regard for whether there was a legitimate basis for these statements. Plaintiffs' assertions that [they] had no knowledge of the Scott County foreclosure action is directly contradicted by the many examples of not only communications sent by counsel for Defendants, but references to the foreclosure action in Plaintiffs' own documents and reports generated by Plaintiffs' expert witnesses. The clearest and most obvious smoking gun was Madhiwala's 2015 affidavit offered in support of his case against Defendants in Cook County, in which he specifically references the Scott County foreclosure case. When examining these blatant contradictions from an objective standpoint, the Court cannot help but conclude that Plaintiffs and [Caghan] violated Iowa Rules of Civil Procedure 1.981(7) and 1.413(1).
The district court believed the plaintiffs' arguments about the consent order left "the Court no choice but to conclude that the allegations concerning the Consent Order were fabricated in order to sustain the cause of action." Caghan's misconduct is reprehensible and led directly to the court's entry of judgment on its sanction award of $123,359 against Caghan and his clients who the court found "willingly made false representations at Caghan's urging."
We have a monetary measure for the harm Caghan's misconduct caused the opposing party: the $123,359 in attorney fees incurred defending the false claims in court actions in two states. The district court's sanction award in that amount remains unsatisfied, which leaves the victim uncompensated. And because Caghan's clients are jointly and severally liable for the cost judgment, we also have client *610 harm in that amount to consider in calibrating the disciplinary sanction. Yet the majority fails to discuss this victim harm or client harm in setting its six-month sanction.
The majority relies primarily on the six-month suspension imposed in Iowa Supreme Court Attorney Disciplinary Board v. Barnhill , 885 N.W.2d 408, 426 (Iowa 2016), which in turn found a "useful comparator" in the six-month suspension imposed in Iowa Supreme Court Attorney Disciplinary Board v. McGinness , 844 N.W.2d 456, 467 (Iowa 2014). McGinness lied about serving discovery responses and doubled down on his false story when challenged, resulting in needless court proceedings. McGinness , 844 N.W.2d at 466. McGinness had an unblemished disciplinary history and a strong record of community service, and we viewed his misconduct as "an extraordinary one-time occurrence that is out of character for him." Id. at 467. During the disciplinary proceedings, McGinness "largely [fell] on his sword" and "unequivocally concede[d] the record support[ed] the ethics violations." Id. at 464.
By contrast, Caghan, throughout these disciplinary proceedings, has continued to claim the fraud actions were justified. Caghan has a history of frivolous claims resulting in sanctions of $141,475 imposed by an Ohio court and $38,000 by an Illinois court.
We equated Barnhill's conduct to that of McGinness and warned that if the pattern of frivolous litigation "continues, the sanctions will escalate further ... including possible revocation." Barnhill , 885 N.W.2d at 426. Caghan's pattern of false or frivolous claims in three states justifies escalating his sanction to at least one year. We noted Barnhill's volunteerism and pro bono work and her voluntary cessation of practice in mitigation. Id. at 425. No mitigating factors justify leniency for Caghan.
The majority also relies on Iowa Supreme Court Attorney Disciplinary Board v. Sporer , imposing a six-month suspension on a lawyer who gave false testimony litigating contempt proceedings over a disputed settlement. 897 N.W.2d 69, 90-91 (Iowa 2017). In imposing the six-month suspension, we concluded Sporer's conduct was most analogous to the conduct in McGinness . Id. We determined that the Board failed to establish that Sporer had engaged in conduct prejudicial to the administration of justice "because the Board has not shown that the hearings associated with the contempt matter would not have occurred but for the ethical violations or that they were materially delayed or extended by Sporer's unfounded testimony." Id. at 87. There is no such failure of proof here-Caghan's misconduct resulted in multiple court hearings and two lawsuits that never should have been filed and cost $123,359 to defend.
"We have said '[d]ishonesty, deceit, and misrepresentation by a lawyer are abhorrent concepts to the legal profession, and can give rise to the full spectrum of sanctions, including revocation.' " Iowa Supreme Ct. Att'y Disciplinary Bd. v. Van Beek , 757 N.W.2d 639, 643 (Iowa 2008) (quoting Iowa Supreme Ct. Att'y Disciplinary Bd. v. Hall , 728 N.W.2d 383, 387 (Iowa 2007) ). "Because honesty is crucial to the judicial process and administration of justice, a misrepresentation by a lawyer 'generally results in a lengthy suspension of the license to practice law.' " Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Ruth , 656 N.W.2d 93, 100 (Iowa 2002) (quoting Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Hohenadel , 634 N.W.2d 652, 656 (Iowa 2001) ). We have previously stated,
Fundamental honesty is the base line and mandatory requirement to serve in the legal profession. The whole structure of ethical standards is derived from the *611 paramount need for lawyers to be trustworthy. The court system and the public we serve are damaged when our officers play fast and loose with the truth.
Hohenadel , 634 N.W.2d at 656 (quoting Comm. on Prof'l Ethics & Conduct v. Bauerle , 460 N.W.2d 452, 453 (Iowa 1990) ).
Our cases provide ample support for at least a one-year suspension for false court filings. See, e.g. , Iowa Supreme Ct. Att'y Disciplinary Bd. v. Barry , 908 N.W.2d 217, 234-35 (Iowa 2018) (imposing one-year suspension on attorney who repeatedly lied about the status of a dissolution action he never filed and who falsified a dissolution decree and judge's signature); Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kallsen , 814 N.W.2d 233, 238-40 (Iowa 2012) (imposing one-year suspension on an attorney who notarized and filed a forged guilty plea agreement without informing his client beforehand); Iowa Supreme Ct. Att'y Disciplinary Bd. v. Cunningham , 812 N.W.2d 541, 554 (Iowa 2012) (imposing eighteen-month suspension on attorney who knowingly violated a discovery order, neglected client matters, and made misrepresentations to clients and officers of the court); Iowa Supreme Ct. Att'y Disciplinary Bd. v. Rickabaugh , 728 N.W.2d 375, 381-82 (Iowa 2007) (revoking an attorney's license for fabricating documents, forging signatures, making misrepresentations, neglecting cases, accepting fees prematurely, practicing while suspended, and for otherwise "demonstrat[ing] a blatant disregard for his duty as an attorney to be honest and truthful").
For these reasons, I am unable to join the majority's opinion.
Christensen and McDonald, JJ., join this concurrence in part and dissent in part.