# IN THE SUPREME COURT OF IOWA

No. 20–0844

Submitted October 14, 2020—Filed November 13, 2020

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Complainant,

vs.

**LORI JO KIEFFER-GARRISON,**

Respondent.

On review of the report of the Iowa Supreme Court Grievance Commission.

In an attorney disciplinary action, the grievance commission recommends a one-year suspension for the attorney's violation of ethical rules. **LICENSE SUSPENDED.**

Christensen, C.J., delivered the opinion of the court, in which all justices joined.

Tara van Brederode and Wendell J. Harms, Des Moines, for complainant.

Lori J. Kieffer-Garrison, Davenport, pro se.

**CHRISTENSEN, Chief Justice.**

The Iowa Supreme Court Attorney Disciplinary Board charged an Iowa attorney with violations of the Iowa Rules of Professional Conduct after she failed to consult with her client before signing his name to court filings, including a waiver of the client's preliminary hearing and his right to a speedy trial, and allegedly made knowingly false statements to the court. The Iowa Supreme Court Grievance Commission found various violations of our ethical rules and recommended suspending the attorney's license to practice law indefinitely for a period of at least one year from the date of our holding in this matter. Upon our de novo review of the record, we conclude the Board proved the alleged violations and suspend the attorney's license to practice law indefinitely with no possibility of reinstatement for one year from the date of this opinion.

## I. Factual and Procedural Background.

Lori Jo Kieffer-Garrison has been licensed to practice law in Iowa since 2002. In her approximately eighteen years of practice in Iowa, Kieffer-Garrison has incurred numerous sanctions for her violations of our ethical rules of conduct. In 2009 and 2010, she was privately admonished for violating Iowa Rules of Professional Conduct 32:1.3 and 32:8.4(d), each time for failure to cure a notice of default from the clerk of this court. In 2010, she also received a public reprimand from our court for violating rule 32:4.2 after she engaged in negotiations with an adverse party outside the presence of said party's counsel and prepared a handwritten agreement for the adverse party to sign that already contained her client's signature. In 2014, we suspended Kieffer-Garrison's license to practice law for six months for violating rules 32:1.2(a), 32:1.3, 32:3.2, 32:3.3(a)(1), 32:8.4(c), and 32:8.4(d). *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kieffer-Garrison*, 847 N.W.2d 489, 492–96 (Iowa 2014). There, Kieffer-

Garrison "repeatedly missed appellate deadlines in several criminal cases, received twenty default notices as a consequence of those missed deadlines, failed to pay resulting penalties in a timely fashion over a period of two years," and falsely represented to her client and the clerk of this court that she had timely filed an application for further review in a postconviction appeal by mail. *Id.* at 491–92.

Shortly after Kieffer-Garrison's law license was reinstated, she was publicly reprimanded in January 2015 for violating rules 32:1.1, 32:1.4(a)(2)–(4), 32:1.4(b), and 32:1.16(d) in the course of representing three clients in postconviction-relief actions. Kieffer-Garrison failed to inform one client of the court of appeals decision denying the client's postconviction-relief action within the time available to seek further review by our court and of the need to apply for further review to preserve the client's ineffective assistance claim for possible federal habeas corpus relief. In response to the complaint, Kieffer-Garrison declared she did not practice in federal court and did not "know the procedures for habeas corpus."

She similarly failed to communicate with another client in a postconviction-relief action, including communications about the next step in his appeal after the court of appeals denied his application for postconviction relief. Kieffer-Garrison also failed to take the steps necessary to protect a client in another postconviction-relief action when she was ordered to withdraw from representing the client and subsequently ignored requests from the client and his new attorney for the client's file. The Board concluded a suspension was unnecessary because her 2014 suspension "was contemporaneous or nearly contemporaneous" with the misconduct at issue in the reprimand.

Kieffer-Garrison was publicly reprimanded again in October 2017 for violating rules 32:3.4(c) and 32:8.4(d) after she cut her client's signature from a court document and attempted to attach the cutout signature to a required pretrial conference form in front of a court attendant. She also permitted her client to leave before the pretrial conference had concluded, resulting in the district court's issuance of a bench warrant for the client's failure to appear that led to the client's arrest and a pretrial conference at a later date.

The alleged violations in this case stem from Kieffer-Garrison's court-appointed representation of Joseph Johnson in a criminal case in 2019. The district court first appointed Kieffer-Garrison to represent Johnson at his initial appearance on February 13, 2019. Kieffer-Garrison filed an appearance and waived the preliminary hearing for Johnson's case the next day, and the district court subsequently canceled Johnson's preliminary hearing and scheduled his arraignment for March 14. Kieffer-Garrison never communicated with Johnson about waiving the preliminary hearing.

On February 15, Kieffer-Garrison wrote Johnson a letter noting her appointment as his attorney and stated,

> We must enter a written arraignment form and plea of not guilty. Please complete the enclosed documents, sign where indicated and return to me ASAP. I have provided a self-addressed stamped envelope for your convenience. If an arraignment form is not filed, a warrant will be issued for your arrest.

Johnson never received the letter, and he arrived at the district court to attend his preliminary hearing on February 22 because Kieffer-Garrison did not inform him she had advised the court it was being waived. On March 12, Kieffer-Garrison filed a written arraignment and plea of not guilty on Johnson's behalf, which included a signature purporting to be

Johnson's, dated March 11, on the written arraignment and the plea of not guilty. However, as of March 12, Kieffer-Garrison had yet to communicate with Johnson or receive the written arraignment and plea she mailed him on February 15.

Two days later, the Scott County Attorney filed a trial information charging Johnson, who had been previously convicted of a felony, with having dominion or control of a firearm, and Johnson appeared before the district court for his arraignment. He told the court he had not met with Kiefer-Garrison about his case and denied ever seeing the written arraignment Kieffer-Garrison filed on his behalf. Johnson denied signing the written arraignment and provided the court with three forms of identification containing his signature.

The court and the assistant county attorney both compared the signature on the written arraignment with Johnson's signature on his financial affidavit and application for appointment of counsel, as well as the three forms of identification Johnson provided. The court concluded the signature on the written arraignment had "similarities" to Johnson's signature but was "not the same." At that point, the court informed Johnson that it was "going to instruct Ms. Kieffer-Garrison that she is to have face-to-face contact with you" and continued the arraignment until March 21.

Kieffer-Garrison and Johnson met for the first time at Johnson's continued arraignment on March 21. Kieffer-Garrison claimed she did not have Johnson's file with her but had reviewed it earlier. She informed the court that she mailed Johnson a letter and written arraignment form with a self-addressed envelope. However, as Kieffer-Garrison now stipulates, she proceeded to make false statements about the written arraignment.

Kieffer-Garrison falsely told the court that she received Johnson's written arraignment form in the mail with what she believed was Johnson's signature and filed it. Johnson reiterated to the court that he had not received any mail from Kieffer-Garrison and neither he nor anyone else at his direction signed the arraignment. The court ultimately struck the written arraignment Kieffer-Garrison filed due to "a discrepancy in the written arraignment," appointed a new attorney to represent Johnson, and continued the arraignment again.

On December 13, the Board filed a complaint against Kieffer-Garrison, alleging she violated numerous rules of professional conduct—all of which she has been sanctioned for violating in the past—during her representation of Johnson. The parties entered into a stipulation of facts on March 12, 2020, and waived the formal hearing. The Board recommended a one-year suspension of Kieffer-Garrison's license.

The commission found Kieffer-Garrison violated all five rules of professional conduct alleged in the Board's complaint. First, it found she violated rule 32:1.2(a), requiring a lawyer to abide by the client's decisions regarding the objectives of representation, when she failed to communicate with Johnson about his objectives and waived the preliminary hearing and his right to a speedy trial without consulting him. Second, the commission concluded Kieffer-Garrison violated rule 32:1.4(a)(2), which requires a lawyer to reasonably consult with the client, by waiving Johnson's preliminary hearing and right to speedy trial without his knowledge before she had ever communicated with him. Third, it determined she violated rule 32:1.4(a)(3), which requires a lawyer to keep the client reasonably informed, explaining she had only sent Johnson one letter during the five weeks she represented him and left Johnson without the benefit of counsel to navigate his early court proceedings. Fourth, the commission found

Kieffer-Garrison violated rule 32:3.3(a)(1), by which a lawyer shall not knowingly make a false statement of fact to a tribunal, in multiple ways based on the false signature of Johnson's that she filed and the false information she told the district court. Finally, it concluded Kieffer-Garrison violated rule 32:8.4(d), which prohibits a lawyer from engaging in conduct that is prejudicial to the administration of justice, because her falsified written arraignment caused the court to schedule additional arraignment hearings in Johnson's case.

In reaching its recommended sanction, the commission concluded there were no mitigating factors. However, it found the following aggravating factors: Kieffer-Garrison's prior disciplinary action for the same type of conduct, her experience in practicing law, and her violation of multiple rules. The commission recommended a one-year suspension of Kieffer-Garrison's law license.

## II. Standard of Review.

We review attorney disciplinary proceedings de novo. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Watkins*, 944 N.W.2d 881, 887 (Iowa 2020). The Board must prove the alleged attorney misconduct by a convincing preponderance of evidence, which is a more demanding standard than proof by a preponderance of the evidence, but "less demanding than proof beyond a reasonable doubt." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Nine*, 920 N.W.2d 825, 827–28 (Iowa 2018) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Johnson*, 884 N.W.2d 772, 777 (Iowa 2016)). Factual stipulations bind the parties, and we interpret those stipulations "with reference to their subject matter and in light of the surrounding circumstances and the whole record." *Id.* at 828 (quoting *Johnson*, 884 N.W.2d at 777). Finally, we respectfully consider the commission's recommended sanction, but we ultimately "have the discretion to 'impose

a greater or lesser sanction than what the commission has recommended upon proof of an ethical violation.' " *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Noel*, 923 N.W.2d 575, 582 (Iowa 2019) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Mathahs*, 918 N.W.2d 487, 489 (Iowa 2018)).

### III.  Ethical Violations.

The Board alleged, and the commission found, that Kieffer-Garrison violated the following five Iowa Rules of Professional Conduct: 32:1.2(a), 32:1.4(a)(2), 32:1.4(a)(3), 32:3.3(a)(1), and 32:8.4(d).  Despite the commission's findings, we still must conduct a de novo review of Kieffer-Garrison's alleged ethical violations.  *Watkins*, 944 N.W.2d at 887.  Upon our review, we agree with the commission's findings.

### A. Rule 32:1.2(a): Scope of Representation and Allocation of Authority Between Client and Lawyer.  Rule 32:1.2(a) provides,

> [A] lawyer shall abide by a client's decisions concerning the objectives of representation and, as required by rule 32:1.4, shall consult with the client as to the means by which they are to be pursued.  A lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation. . . .  In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered. . . .

Iowa R. Prof'l Conduct 32:1.2(a).  Although Kieffer-Garrison was appointed to represent Johnson on February 13, 2019, she had not met or spoken with him until March 21.  During that period, Kieffer-Garrison waived Johnson's preliminary hearing and his right to a speedy trial, and, without his knowledge or consent, signed his name and filed a written arraignment and plea of not guilty with his purported signature.  Never having consulted Johnson about any of these actions, Kieffer-Garrison undoubtedly violated her professional duty to abide by her client's decisions concerning the objectives of representation and took unauthorized action on his behalf.  *See Iowa Supreme Ct. Att'y Disciplinary*

*Bd. v. Schall*, 814 N.W.2d 210, 213–14 (Iowa 2012) (holding lawyer violated rule 32:1.2(a) by altering plea of not guilty form to effect an unauthorized waiver of right to speedy trial).

**B. Rule 32:1.4(a)(2) and (3): Client Communication.** Rule 32:1.4(a)(2) requires a lawyer to "reasonably consult with the client about the means by which the client's objectives are to be accomplished," and rule 32:1.4(a)(3) requires a lawyer to "keep the client reasonably informed about the status of the matter." Iowa R. Prof'l Conduct 32:1.4(a)(2)–(3). "A lawyer's regular communication with clients will minimize the occasions on which a client will need to request information concerning the representation." *Id.* r. 32:1.4 cmt. 4. Kieffer-Garrison never consulted Johnson before waiving his preliminary hearing and right to speedy trial, nor did she communicate with him to inform him that she had waived his preliminary hearing. Johnson went to the district court for his preliminary hearing unaware that Kieffer-Garrison had waived it. We find Kieffer-Garrison violated rules 32:1.4(a)(2) and (3). *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Turner*, 918 N.W.2d 130, 145 (Iowa 2018) (finding an attorney violated rules 32:1.4(a)(2) and (3) when he did not communicate information to his clients that left them unaware he would not represent them at hearings and failed to inform clients of court hearings).

**C. Rule 32:3.3(a)(1): Candor Toward the Tribunal.** Rule 32:3.3(a)(1) prohibits a lawyer from "knowingly" making "a false statement of fact or law to a tribunal or fail[ing] to correct a false statement of material fact . . . previously made." Iowa R. Prof'l Conduct 32:3.3(a)(1). The rules define "knowingly" as "actual knowledge of the fact in question" and can "be inferred from circumstances." Iowa R. Prof'l Conduct 32:1.0(f). Kieffer-Garrison falsified Johnson's name to the written arraignment form waiving

his right to a speedy trial without ever consulting with Johnson, thereby misrepresenting the form's authenticity in a legal proceeding.

She then proceeded to make statements to the district court that she knew were untrue. As she stipulates, she falsely told the district court that she had received the written arraignment form in the mail with what she believed was Johnson's signature and filed it. Based on this conduct, we conclude Kieffer-Garrison violated rule 32:3.3(a)(1). *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. McGinness*, 844 N.W.2d 456, 462–63 (Iowa 2014) (concluding a lawyer violated rule 32:3.3(a)(1) when he falsified certificates of service on discovery requests and made statements to the district court that the certificates were legitimate).

**D. Rule 32:8.4(d): Conduct Prejudicial to the Administration of Justice.** Under rule 32:8.4(d), it is professional misconduct for an attorney to "engage in conduct that is prejudicial to the administration of justice." Iowa R. Prof'l Conduct 32:8.4(d). "Violations of this rule impede the efficient operation of the courts and waste judicial resources." *Kieffer-Garrison*, 847 N.W.2d at 495. Kieffer-Garrison's conduct was prejudicial to the administration of justice because it required the court to waste judicial resources in scheduling additional arraignment hearings for Johnson. *See id.* (finding "Kieffer-Garrison's conduct was, by a convincing preponderance of the evidence, prejudicial to the administration of justice because it caused the court to waste judicial resources in addressing a motion falsely asserting she filed an application for further review").

**IV. Sanction.**

We examine a number of factors in our fact-based analysis to determine the appropriate sanction, including "the nature of the violations, protection of the public, deterrence of similar misconduct by others, the lawyer's fitness to practice, and [our] duty to uphold the

integrity of the profession in the eyes of the public." *Watkins*, 944 N.W.2d at 888 (alteration in original) (emphasis omitted) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Stansberry*, 922 N.W.2d 591, 598 (Iowa 2019)). We also consider any mitigating and aggravating circumstances. *Id.* at 888–89. We strive to "maintain[] some degree of uniformity throughout our disciplinary cases," but the facts of each case ultimately guide the sanction. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Barry*, 908 N.W.2d 217, 227 (Iowa 2018).

The commission and the Board both recommended one-year suspensions of Kieffer-Garrison's license. "We give the commission's recommendation respectful consideration, but may impose a greater or lesser sanction." *Turner*, 918 N.W.2d at 152 (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Morse*, 887 N.W.2d 131, 143 (Iowa 2016)). Notably, it is easier for our court to consider the commission's recommendation when the commission provides legal authority supporting its recommendation. Here, the commission provided legal authority supporting its findings that Kieffer-Garrison violated the aforementioned rules, but it only provided a few generic statements of legal authority without explaining how these statements applied or how it arrived at its recommended sanction in this case.

Kieffer-Garrison's decision to misrepresent that her client signed the written arraignment form and plea of not guilty alone "is a 'grave and serious breach of professional ethics.'" *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kallsen*, 814 N.W.2d 233, 239 (Iowa 2012) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Rickabaugh*, 728 N.W.2d 375, 382 (Iowa 2007)). "[U]nquestioned honesty of attorneys dealing with judges" is crucial to "[t]he integrity of our legal system." *Id.* (quoting *Comm. on Pro.*

*Ethics & Conduct v. Seff,* 457 N.W.2d 924, 927 (Iowa 1990)). As we have stressed in our past attorney disciplinary cases and reiterate again today,

> [f]undamental honesty is the base line and mandatory requirement to serve in the legal profession. The whole structure of ethical standards is derived from the paramount need for lawyers to be trustworthy. The court system and the public we serve are damaged when our officers play fast and loose with the truth.

*Id.* (alteration in original) (quoting *Rickabaugh,* 728 N.W.2d at 382).

We subject attorneys who actively disregard this fundamental baseline "to substantial sanctions ranging from permanent disbarment to six-month license suspensions." *Id.* For instance, we disbarred an attorney in *Iowa Supreme Court Attorney Disciplinary Board v. Rickabaugh* for multiple misrepresentations, including forging the executor's name on a probate report submitted to the court, after he had previously been submitted for forging a judge's signature to persuade a client that he had filed a lawsuit. 728 N.W.2d at 378, 382. In *Iowa Supreme Court Attorney Disciplinary Board v. Kallsen,* we suspended an attorney's license for one year after he violated four of our ethical rules—including rules 32:1.2(a), 32:3.3(a)(1), and 32:8.4(d), which Kieffer-Garrison also violated in this case—when he forged a guilty plea with the district court resulting in his client serving a seven-day jail sentence. 814 N.W.2d at 239–40. That attorney had only been disciplined once before, and that prior disciplinary action did not involve the same type of misconduct. *Id.* at 240.

We suspended Kieffer-Garrison's license to practice law with no possibility of reinstatement for six months in 2014, in part due to her dishonesty. *Kieffer-Garrison,* 847 N.W.2d at 496. There, she falsely represented to her client and the clerk of this court that she had timely filed an application for further review in a postconviction appeal by mail, as well as "repeatedly missed appellate deadlines in several criminal cases,

received twenty default notices as a consequence of those missed deadlines, [and] failed to pay resulting penalties in a timely fashion over a period of two years." *Id.* at 491–92. That case presented a mitigating factor in the form of Kieffer-Garrison's depression and pursuit of treatment for it. *Id.* at 496. In this case, Kieffer-Garrison has not presented any evidence suggesting she was suffering depression at the time of her actions, and we will not speculate as to whether depression or any other life circumstances contributed to her behavior in this case such that we would consider it a mitigating factor.

Kieffer-Garrison's misconduct does not rise to the level of misconduct present in *Rickabaugh*, where an attorney with a history of disciplinary action committed multiple forgeries, including the forgery of a judge's signature. 728 N.W.2d at 377–78, 382. On the other hand, the consequences of her misconduct on her client were not as severe as the seven-day jail sentence that the client suffered in *Kallsen* when his attorney forged the client's guilty plea with the district court. 814 N.W.2d at 239–40. The severity of the consequences notwithstanding, the circumstances in this case are still just as troubling as those that led to a one-year suspension in *Kallsen* in light of Kieffer-Garrison's disciplinary record.

Unlike *Kallsen*, who had only faced disciplinary action once before in the form of a three-month suspension for neglect, Kieffer-Garrison has a lengthy disciplinary record that includes various sanctions for misconduct similar to her misconduct in this case. *Id.* at 237. Thus, we would likely give an attorney with a less substantial disciplinary record a lesser sanction than the one-year suspension in *Kallsen* for committing the misconduct at issue in this case because it did not result in a jail sentence for the client. But, we already suspended Kieffer-Garrison's

license in the past for six months for the sort of dishonest behavior she displayed in this case, and it clearly did not deter her from committing it again on multiple occasions. Kieffer-Garrison continues to violate our ethical rules by engaging in dishonest behavior that casts doubt on the integrity of our system, and her behavior warrants a strong sanction to protect the public and our profession.

"Normally, a pattern of misconduct gives rise to enhanced sanctions," *Kieffer-Garrison*, 847 N.W.2d at 496 (quoting *Iowa Supreme Ct. Bd. of Pro. Ethics & Conduct v. Gallner*, 621 N.W.2d 183, 187 (Iowa 2001) (en banc)), as does a case "involve[ing] multiple rule violations," *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Parrish*, 925 N.W.2d 163, 181 (Iowa 2019). Similarly, "[p]rior disciplinary action is a significant aggravating factor. 'This is particularly true when the current rule violations involve the same type of conduct as the prior conduct subject to discipline.' " *Barry*, 908 N.W.2d at 234 (citation omitted) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Weiland*, 885 N.W.2d 198, 215 (Iowa 2016)). Kieffer-Garrison has previously been sanctioned for violating every rule that she violated in this case.

When we suspended Kieffer-Garrison's license for six months in 2014 for her dishonesty, we noted her "persistent perpetuation of a falsehood [was] a 'remarkable aggravating factor.' " *Kieffer-Garrison*, 847 N.W.2d at 496 (quoting *McGinness*, 844 N.W.2d at 466). Kieffer-Garrison's "persistent perpetuation of a falsehood" in this case is all the more remarkable as she was sanctioned again in 2017 for another act of dishonesty when she cut out her client's signature from a court document and attempted to attach the cutout signature to a required pretrial conference form in front of a court attendant. *Id.* Despite receiving multiple sanctions already for rules violations involving dishonesty,

Kieffer-Garrison violated our rules yet again through her dishonest acts in her representation of Johnson in this case.

Kieffer-Garrison violated multiple rules involving dishonesty by falsifying her client's signature on the written arraignment form and plea of not guilty that she filed with the district court, misrepresenting her client's decisions when she had never actually spoken to him. Rather than owning up to this misconduct, she attempted to cover it up through more dishonesty by falsely telling the district court that she had received Johnson's written arraignment form in the mail with what she believed was Johnson's signature and filed it. Kieffer-Garrison's violations "were serial acts of misconduct, rather than an isolated misadventure." *Id.* Her "pattern of deceit reveals a serious character flaw." *Rickabaugh*, 728 N.W.2d at 382. We consider her pattern of misconduct, multiple rules violations, and history of disciplinary action as aggravating factors.

Kieffer-Garrison's "substantial experience in the practice of law is another aggravating factor in imposing discipline." *Parrish*, 925 N.W.2d at 181. She has practiced law in Iowa for approximately eighteen years and is "not a new practitioner unfamiliar with our ethical rules." *Id.* "Knowingly violating our ethical rules is [also] an aggravating circumstance." *Id.* Here, Kieffer-Garrison knew Johnson had not signed the written arraignment form and plea of not guilty, as she stipulates now that she had never communicated with him prior to filing the form and falsely told the district court she had received the written arraignment form with the plea in the mail with what she believed was Johnson's signature.

There is no indication in the record that Kieffer-Garrison has any remorse for this misconduct, which is also an aggravating factor. *Id.* at 182 (noting "showing no remorse is an aggravating factor"). It is alarming

that Kieffer-Garrison continues to violate our ethical rules despite the lengthy nature of her disciplinary record over the past ten years. Her apparent "lack of remorse is a powerful aggravating factor in this case because a major role of our disciplinary system is to protect the public from overreaching and unethical lawyers." *Id.*

The only mitigating factor Kieffer-Garrison proposed in her stipulation was her "[c]ooperative attitude toward the proceedings." However, the commission rejected this consideration and found no mitigating factors, noting Kieffer-Garrison "did not even file a brief in this matter." We agree with the commission that no mitigating factors are present.

Overall, given the nature of Kieffer-Garrison's violations and the number of aggravating factors in this case, the public in general and the legal profession in particular will be best served through a lengthy suspension. "More than anything, [her] obvious indifferent attitude toward our disciplinary system and basic professional norms and [her] persistent history of disciplinary problems weigh heavily in the sanctions scale." *Id.* Accordingly, we suspend Kieffer-Garrison from the practice of law indefinitely with no possibility of reinstatement for one year from the date of this opinion.

## V. Disposition.

We suspend Kieffer-Garrison from the practice of law without the possibility of reinstatement for one year. This suspension applies to all facets of the practice of law as provided in Iowa Court Rule 34.23(3), and Kieffer-Garrison must notify all clients as outlined in Iowa Court Rule 34.24(1). We tax the costs of this action to Kieffer-Garrison in accordance with Iowa Court Rule 36.24(1).

**LICENSE SUSPENDED.**